DEL SOLE, Judge:
 

 In this appeal, Barbara and Joseph Zito challenge the grant of a compulsory non-suit in favor of Merit Outlet and Bernard and Murray Spain, and the imposition of sanctions in the amount of $1,250.00. We affirm in part and reverse in part.
 

 At trial, Mrs. Zito testified that she was shopping in the Appellees’ store. Appellant described the store as “winding and snakey” with merchandise piled very high. As she looked at merchandise stacked to her left, she took a step with her right foot, encountered a downward sloping ramp, and fell. She sustained a dislocated knee. At the time the accident
 
 *215
 
 occurred Appellees had been leasing the property for three years.
 

 The accident occurred in December shortly before Christmas of 1986. Mrs. Zito entered the store, picked up a shopping basket and began filling it with merchandise. The aisle in the store had many areas which required patrons to navigate between boxes. Since the aisles were very narrow, Appellant had to carry the shopping basket in front of her. After finishing her shopping, Mrs. Zito moved toward the cash register. At that time, she was intrigued by an item on her left. As she turned to grab this item, she also had to step forward. Unfortunately, there was nothing to step on, due to the ramp. Her leg then twisted causing her to fall.
 

 Norman R. Goldstein, an engineer, was called by Appellants as an expert in the area of ramp safety and ergonomics with regard to ramp safety. He testified that, based on the BOCA (Building Officials and Code Administrators) 1987 National Building Code, the ramp was twice as steep as it should be with a slope of 12.5 degrees. Goldstein further testified based upon a report supplied to him by Appellants’ counsel which included a statement by Andre Branison, a Merit Outlet employee, that warning tape was on the floor at the time of Mrs. Zito’s fall.
 

 At trial, Mr. Goldstein stated that the ramp starts about a foot before the end of the cashier’s station, dropping at a twelve-and-a-half degree incline over a twenty inch length of run. He could not testify about how the store was stocked or whether the aisles were overcrowded with merchandise at the time that Appellant fell since he did not examine the store until three years after the accident. He could only testify that, based upon what he read in Mrs. Zito’s deposition, the store was heavily stocked with merchandise and the passageway was somewhat narrow requiring her to carry her basket in front of her. As she was looking forward toward the cash register and her downward vision was obstructed by her basket, all of these factors played a role in Mrs. Zito’s accident. Goldstein also mentioned that the ramp was covered in grey carpeting and was not easy to see, but there was
 
 *216
 
 no problem with the lighting. He further testified that after observing the ramp and the area in and around the ramp, it was his opinion that the ramp was excessive and very steep based upon the building codes known to him. Mr. Goldstein attached the 1987 BOCA National Building Code to his report. . He admitted that this code was not in effect at the time that Mrs. Zito fell.
 

 The trial court granted Appellees’ Motion for Compulsory Nonsuit deciding that Appellants failed to show that Appellees had either actual or constructive notice of any harmful defect in the design of the ramp.
 

 We begin by noting that “[a] judgment of nonsuit may be entered only in clear cases and the appellant must be afforded the benefit of every fact and reasonable inference arising from the evidence.”
 
 Canty v. Sun Transport, Inc.,
 
 422 Pa.Super. 607, 620 A.2d 1, 2 (1992). A nonsuit is only appropriate if the facts are so clear that reasonable persons could not differ about the finality of their evidentiary significance.
 
 Id.
 

 Section 343 of the Restatement (Second) of Torts sets forth the duty owed to invitees:
 

 A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
 

 (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
 

 (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
 

 (c) fails to exercise reasonable care to protect them against the danger.
 

 Myers v. Penn Traffic Co.,
 
 414 Pa.Super. 181, 606 A.2d 926 (1992),
 
 appeal denied,
 
 533 Pa. 625, 620 A.2d 491 (1993). The owner of the store, however, is not an insurer of the safety of its patrons.
 
 Id.
 
 Additionally, “the mere existence of a harmful condition in a public place of business, or the mere
 
 *217
 
 happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor’s duty of care to his invitees, nor raises a presumption of negligence.”
 
 Moultrey v. Great
 
 A
 
 & P. Tea Co.,
 
 281 Pa.Super. 525, 422 A.2d 593, 596 (1980). In order to recover damages in a “slip and fall” case such as this, the invitee must present evidence which proves that the store owner deviated in some way from his duty of reasonable care under the existing circumstances.
 
 Id.
 
 This evidence must show that the proprietor knew, or in the exercise of reasonable care should have known, of the existence of the harmful condition.
 
 Id.
 
 Section 343 also requires the invitee to prove either that the store owner helped to create the harmful condition, or that it had actual or constructive notice of the condition.
 
 Id.
 

 Appellants assert the evidence established Appellees had actual notice of the dangerous condition, and, therefore, the entry of the non-suit was error. We agree.
 

 The ramp existed for the entire time the Appellees leased the store. They were obviously aware of its existence and its degree of slope. The question for the jury is did Defendant have a duty to warn the Plaintiff-invitee of its existence. Normally, a person is responsible to observe that which can be seen. However, the evidence presented by the plaintiff was that the defendants created an environment which was designed to attract the shoppers attention to various displays. In doing so, it prevented the plaintiff from seeing the ramp. Under these circumstances, the matter should have been submitted to the jury.
 

 The jury should have been permitted to determine if the Appellees had acted in such a fashion that they could not rely on the Appellant observing the existing ramp. In answering this question, they would consider the placement of displays and the width of the aisle. Given the conditions testified to by Appellant, the jury could determine if the defendants were required to warn the plaintiff of the ramp.
 

 Section 343 A of the Restatement (Second) of Torts provides some guidance in this area. It states:
 

 
 *218
 
 Known or Obvious Dangers
 

 (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
 

 Comment f to subsection (1) of § 343 A of the Restatement explains in part that:
 

 Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee’s attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect danger because to a reasonable man in his position the advantages of doing so would outweigh the risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (See §§ 466 and 496D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.
 

 In
 
 Rogers v. Max Azen, Inc.,
 
 340 Pa. 328, 16 A.2d 529 (1940), the defendant, a fur store, appealed the judgment in favor of plaintiff who sued to recover for injuries sustained when she fell on defendant’s premises. Plaintiff testified that she was directed to take a set of stairs to the second floor and turn right. When she did, she tripped over the end of a half-inch high base which anchored the banister to the floor. The court disagreed with plaintiffs contention that the railing was improperly constructed and reversed the judgment because plaintiff testified that she was not looking at the base protruding from the stairway and there was nothing to divert her attention from where she was stepping. The court, nevertheless, opined:
 

 It is true that a less degree of attention in the placement of the feet is required of customers in stores who “walk along the aisles where goods are displayed upon every hand
 
 *219
 
 for the very purpose of catching the eye and attracting the attention of those who use the passageways,” than is required of pedestrians on sidewalks, and that the contributory negligence of a person falling over obstacles under such circumstances is usually for the jury. (Citations omitted).
 

 Id.
 
 340 Pa. 328, 332, 16 A.2d 529. See also
 
 Beary v. Container General Corp.,
 
 368 Pa.Super. 61, 533 A.2d 716, allocatur denied, 520 Pa. 586, 551 A.2d 213 (1987) (Even if electrical wires were obvious, sufficient evidence was presented to allow the jury to infer that the company for whom storage tank was to be constructed should have anticipated that while working in vicinity of wires with its mobile crane and its boom, the independent contractor’s employees might be distracted and inadvertently come into contact with wires);
 
 Hallbauer v. Zarfoss,
 
 191 Pa.Super. 171, 156 A.2d 542 (1959) (Even though shopper fell down unlit stairs, where evidence established that the stairs were for use by customers, and store owner constructed displays in a manner that would attract the customers attention, issues of defendants negligence and plaintiffs contributory negligence were for jury);
 
 Yarkosky v. The Caldwell Store, Inc.
 
 189 Pa.Super. 475, 151 A.2d 839 (1959) (When determining whether a business visitor’s failure to observe a dangerous condition relieves the possessor of liability, the fact that the possessor has objects on display which diverted the visitor’s attention is an important factor, and a lesser degree of attention is required of customers in the. stores under such circumstances).
 

 We find that sufficient evidence was presented to avoid the entry of a non-suit against Appellant. Based on Appellant’s evidence that the ramp was too steep, the merchandise in the store was distracting and the aisles overcrowded requiring her to carry her basket in front of her so that her view was obstructed, a jury, given the opportunity, could have inferred that Appellees failed in their duty of care under the Restatement (Second) of Torts §§ 343 and 343 A and were liable to Appellant for the injuries that she sustained.
 
 [1]
 

 
 *220
 
 Finally, Appellants claim the trial court erred when it imposed sanctions against them for delay. After the jury was selected and the trial set to begin, Appellants requested a half-day recess to permit the taking of a physician’s video deposition. They contend they could not obtain this deposition until the first day of the trial. They argue that the trial court abused its discretion by ordering the financial sanctions of $1,250.00 for the one-half day delay.
 

 This case was placed into the Day Backward Program of the Civil Case Delay Reduction Strategy which was implemented to address the backlog of untried cases pending for four or more years. At the trial scheduling conference on May 11, 1993, the trial was scheduled for June 1st through June 4, 1993. Appellants also received notice that the trial could start within one week of the trial scheduling conference. At this time, the physician had not been deposed, nor was his availability for trial established. After the scheduling conference, Appellants learned that Dr. Distefano was on vacation and would not be available except for video deposition on June 1st in the afternoon. This information was not communicated to the trial court until three days prior to the scheduled trial date of June 1. As a result, the court was unable to schedule another case on such short notice.
 

 The trial court explained on the record that the order was entered because the one-half day postponement poses a delay in administration of justice solely to accommodate Appellants’ failure to earlier prepare for trial. The $1,250.00 sanction was to reimburse the City and County of Philadelphia and this represented one-half of the daily cost of operating the courtroom. The delay and more importantly, the cost of the delay is directly attributable to the failure of counsel to timely prepare for trial or earlier advise the court of scheduling problems. While we are aware and sympathetic to the problems of counsel in scheduling witnesses, particularly experts, for trial, we cannot find that a court abuses its authority when, in appropriate circumstances, it imposes the costs occasioned
 
 *221
 
 by a litigant on that litigant. Courts are under tremendous pressure to dispose of ever increasing caseloads in the face of shrinking resources. To protect the public’s resources by requiring reimbursement is not unreasonable.
 
 [2]
 

 We reverse the grant of the compulsory non-suit in favor of Merit Outlet and Bernard and Murray Spain, and we affirm the order imposing sanctions against Appellants.
 

 McEWEN, J., concurs in the result.
 

 [1]
 

 . Appellants also raise the claim that the trial court erred by limiting their expert's testimony. Since we have determined that the entiy of
 
 *220
 
 the nonsuit was improper, a discussion of this issue will not be necessary.
 

 [2]
 

 . We note that the trial court, contrary to Appellant’s argument, did not impose the financial sanction pursuant to Philadelphia local rule of civil procedure 212.2 which bestows authority on the court to impose sanctions for failure to settle a case. The rule was referred to because it itemizes the costs of operating a court in Philadelphia on a daily basis. Appellants challenge the imposition of a sanction, not the amount.