J-A33021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MADGE AUSTIN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| WOODWARD PROPERTIES, INC. | |
| Appellee | No. 427 EDA 2015 |

Appeal from the Judgment Entered January 28, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No: August Term, 2013, No. 3481

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED April 21, 2016**

Appellant, Madge Austin, appeals from the January 28, 2015 judgment entered in the Court of Common Pleas of Philadelphia County following that court's entry of a January 5, 2015 order denying her motion to remove a compulsory nonsuit entered in favor of Appellee, Woodward Properties, Inc.[1] Following review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant suggests she is appealing from both the November 18, 2014 order granting the nonsuit and the January 5, 2015 order denying removal of the nonsuit.  However, the appeal properly lies from judgment entered on the order denying removal of the nonsuit.  *See, e.g., Harvey v. Rouse Chamberlin, Ltd.*, 901 A.2d 523, 524 n. 1 (Pa. Super. 2006) (quoting *Billig v. Skvarta*, 853 A.2d 1028, 1030 n. 1 (Pa. Super. 2004) ("[I]n a case where nonsuit was entered, the appeal properly lies from the judgment

*(Footnote Continued Next Page)*

The trial court provided the following procedural and factual background:

## Procedural History

This is a Motion for Post-Trial Relief filed by Plaintiff Madge Austin, after a November 13th, 2014, decision granting Defendant's Compulsory Nonsuit pursuant to [Pa.R.C.P] 230.1.

Plaintiff Madge Austin commenced this lawsuit by filing a Complaint on January 6, 2014 alleging negligence against Defendant Woodward Properties, Inc.

On November 3rd, 2014, the Honorable Mark I. Bernstein signed an Order bifurcating the case, thus, only the liability portion proceeded to trial.

On November 24th, 2014, Plaintiff timely filed a Motion for Post-Trial Relief; challenging the decision to grant the Nonsuit.

## Factual History

This lawsuit stems from the evening of February 26, 2013, when Plaintiff fell down part of an interior stairway at the Stonehurst Court Apartments, an apartment complex in Upper Darby, PA, owned by Stonehurst Walnut Associate, LP and managed by Defendant, Woodward Properties, Inc. Plaintiff had been working occasionally as a babysitter for Maureen Loughery, a third-floor tenant at the Stonehurst Court Apartments.

Plaintiff alleged injuries occurred when she slipped and fell on a partially eaten piece of pizza, on a piece of greasy wax paper on one of the stairs, as she descended from the second to the first floor. Plaintiff admitted that the debris was approximately the size of a dinner plate and had no explanation for why she failed to notice the alleged debris in time to avoid stepping on it. After two (2) days of trial, this Court granted Defendant's motion for nonsuit

_(Footnote Continued)_ ───────────────

entered after denial of a motion to remove nonsuit.")). The caption has been corrected accordingly.

- 2 -

based on Plaintiffs failure to meet her burden of proving notice by not introducing evidence as to how long the transitory debris had been on the stairs.

Trial Court Memorandum, 1/5/15, at 1-2 (footnote omitted).

On January 28, 2015, the trial court's order was reduced to judgment.

This timely appeal followed.

Appellant presents three issues for our consideration:

1. Was the [t]rial [c]ourt's entry of nonsuit an error of law or abuse of discretion when [Appellant] submitted evidence that [Appellee] was on notice of a recurring danger of trash on the steps, that [Appellee] attempted to make the steps safer prior to [Appellant's] fall, and a jury could conclude, based on the evidence, that [Appellee's] effort to make the steps safer was not reasonable?

2. Was the [t]rial [c]ourt's entry of nonsuit an error of law or an abuse of discretion when the [r]ecord supports a finding that [Appellee's] conduct created an unreasonable risk of harm to invitees and it failed to act reasonably to protect invitees in response to a known danger?

3. Was it an error of law or an abuse of discretion when the [t]rial [c]ourt refused to permit [Appellant] from presenting a theory of liability that [Appellee's] breach of its management contract caused harm to [Appellant]?

Appellant's Brief at 5.[2]

We begin by setting forth our standard of review.

_____

[2] We remind counsel for Appellant of the requirement of Pa.R.A.P. 2111(11) to include with an appellant's brief a copy of the statement of errors complained of on appeal filed with the trial court pursuant to Pa.R.A.P. 1925(b) or an averment that no order was entered requiring a statement of errors.

Our standard of review is well-established: "A nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action had been established." **Brinich v. Jencka**, 757 A.2d 388, 402 (Pa. Super. 2000), *appeal denied,* 565 Pa. 634, 771 A.2d 1276 (2001) (citation and internal quotation marks omitted). Furthermore, all conflicts in the evidence must be resolved in the plaintiff's favor. *See* **Gigus v. Giles & Ransome, Inc.**, 868 A.2d 459, 461 (Pa. Super. 2005), *appeal denied,* [895 A.2d 550 (Pa. 2006)]. In reviewing the evidence presented we must keep in mind that a jury may not be permitted to reach a verdict based on mere conjecture or speculation. **See Brinich**, 757 A.2d at 402. We will reverse only if the trial court abused its discretion or made an error of law. **See Weiner v. Fisher**, 871 A.2d 1283, 1285 (Pa. Super. 2005).

.

**Harvey**, 901 A.2d at 526.

In her first issue, Appellant asserts trial court error of law or abuse of discretion for entering a nonsuit in light of evidence presented demonstrating that Appellee was on notice of a recurring danger of trash on the steps. Appellant argues the jury could find that Appellee acted unreasonably its efforts to make the steps safe.

In its Memorandum, the trial court recognized that Section 343 of the Restatement (Second) of Torts defines the duty a possessor of property owes to a business invitee such as Appellant. That section, titled "Dangerous Conditions Known to or Discoverable by Possessor," provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

- 4 -

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts, § 343.

In its Memorandum, the trial court cited various slip and fall cases, including **Zito v. Merit Outlet Stores**, 647 A.2d 573 (Pa. Super. 1994), in which this Court held that "the mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence." Trial Court Memorandum, 1/5/15, at 3 (quoting **Zito**, 647 A.2d at 575, in turn citing **Moultrey v. Great A&P Tea Co.**, 422 A.2d 593, 596 (Pa. Super. 1980)). Further, "[a] land owner is not an insurer; he is liable only for the defects that he has actual or constructive notice of; *i.e.*, which could have been discovered by a reasonable inspection." **Id.** (citing, *inter alia*, **Stais v. Sears-Roebuck & Co.**, 106 A.2d 216 (Pa. 1954)).

The trial court recognized that in order "to recover damages in a slip and fall case, a business invitee must present evidence that 'proves that the store owner deviated in some way from his duty of reasonable case under the existing circumstances.'" **Id.** (quoting **Zito**, 647 A.2d at 575). "This

evidence must demonstrate that the proprietor knew, or in the exercise of reasonable care should have known, of the existence of the harmful condition." *Id.*

The trial court next discussed constructive notice, stating that one of the most important factors to be considered is "the time elapsing between the origin of the defect or hazardous condition and the accident." *Id.* at 8 (quoting *Rogers v. Horn & Hardart Baking Co.*, 127 A.2d 762, 764 (Pa. Super. 1956)). In addition, the trial court noted that Pennsylvania case law focuses on the relative durability of the defect, *i.e.*, whether it is transitory, such as soup on a floor, or more durable, such as a raised metal strip on a stair. *Id.*

> [W]here the evidence indicates that the transitory defect is traceable to persons other than those for whom the owner is ordinarily accountable, then "the jury may not consider the owner's ultimate liability in the absence of other evidence which tends to prove that the owner had actual notice of the condition or that the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it."

*Id.* (quoting *Moultrey*, 422 A.2d at 596).

The trial court looked to the facts in *Moultrey*, where the plaintiff slipped and fell on a cherry in a supermarket. There, the trial court granted a nonsuit. This Court affirmed, relying in large part on *Martino v. Great Atl. & Pac. Tea Co.*, 213 A.2d 608 (Pa. 1965), to find that Moultrey failed to discharge the burden of proving the proprietor had either actual or constructive notice of the offending transitory defect.

In **Martino**, the plaintiff fell in a grocery store after stepping on a grape. The trial court entered a nonsuit, holding the plaintiff did not present any proof of how the grape ended up on the floor. Therefore, there was no evidence from which a jury could determine that the store breached its duty by not removing it. This Court affirmed, stating:

> Appellant's burden was to prove that the dangerous condition of appellant's premises causing the fall resulted from appellee's negligence; that appellee was aware that grapes and other refuse were on the floor and made no efforts to remove them. No such proof was, however, produced. Appellee was not an insurer of the safety of business visitors and owed only the duty of reasonable care under the circumstances, specifically, to correct unsafe conditions discoverable through the exercise of reasonable care and diligence. The testimony disclosed that one of appellee's employees was required to and did remove items of refuse from the floor when they were noticed.

**Martino**, 213 A.2d at 608.

The trial court also considered **Markman v. Fred P. Bell Stores, Co.**, 132 A. 178 (Pa. 1926), where the plaintiff was injured when she slipped on vegetable refuse on a wet platform near the store's entrance. However, in that case testimony proved that the defendant washed much of its produce near the store's entrance, causing refuse to build up and leading to many complaints about the conditions to the owner and even to the police. Our Supreme Court affirmed a verdict in favor of the plaintiff, finding the plaintiff had established that the defendant was on notice of the refuse.

After reviewing relevant case law, the trial court concluded:

> Similar to **Martino** and **Moultrey**, [Appellant] slipped and fell on a transitory defect. Like the appellant-invitees in these two

- 7 -

cases, [] Appellant here also maintains the burden of having to prove how long the transitory defect was on the floor. Like in **Martino** and **Moultrey**, Appellant [] did not offer any such proof, either by direct or circumstantial evidence, and in turn, failed [to] meet her burden. Dissimilar to the situation in **Markman**, the trash on the steps [was] not a known frequently-occurring condition that promoted [sic] frequent notices to [Appellee].

The defect, a partially eaten piece of pizza on a piece of greasy wax paper, is not the type of defect with an inherently sustained duration. Rather, this was a transitory defect that certainly could have occurred on the stairs an instant before the alleged accident happened. There was also no witness testifying to seeing the transitory defect at any time before the accident, and no evidence that [Appellee] created it. As such Pennsylvania law requires [Appellant] to produce some evidence that demonstrates how long the transitory defect was on the stairs before the slip and fall. [Appellant] has failed to meet that burden. [Appellant] did not offer any evidence that specifically speaks to trash on the stairs being such a consistent problem that [Appellee] was well-aware of the issue and on notice as in **Markman.**

Trial Court Memorandum, 1/5/15, at 5-6.

The trial court acknowledged Appellant's contention that Appellee was on constructive notice of debris on the stairs based on testimony of Appellee's employee, Christopher Neff, whom Appellant claims testified in his videotaped deposition that "trash was everywhere." *Id.* at 6 n.2. However, the trial court properly rejected Appellant's contention, noting Mr. Neff's statement was taken out of context and that "when read in its entirety, does not seem to indicate that there was always trash 'everywhere,' but rather that on any given day, trash could be located anywhere and/or 'everywhere' around the building." *Id.* We further observe that Mr. Neff described debris

on the premises as items such as gum wrappers and papers and explained that, when observed, the items were picked up. Deposition of Christopher Neff, 11/7/14, at 34-35.

> [B]ecause the defect in question was transitory and there was a complete absence of any evidence to indicate who caused the defect or how long the half eaten slice of pizza was on the stairs prior to the accident, it stands to reason then, that like in **Martino** and **Moultrey**, this Court's decision to grant [Appellee's] compulsory non-suit was the correct decision and clearly in-line with established Pennsylvania case law.

Trial Court Memorandum, 1/5/15, at 6. We agree with the trial court's determination that the condition that caused Appellant to fall was a transitory condition. Further, we agree that there was no evidence to indicate who was responsible for leaving the debris on the steps or how long it was there.[3] Moreover, if a nonsuit was warranted in **Martino** and **Moultrey**, it is warranted even more in the case before us. In those two

_____

[3] Appellant focused much attention on the fact the elevators in the Stonehurst Apartments "rarely worked" necessitating that tenants use the stairs to take their trash to the outside dumpsters. Appellant's Brief at 17. While Appellant testified that the elevator was not working on the evening she fell, there is no indication how long the elevator was out of service. In fact, Appellant testified that she took the elevator on more than one occasion earlier that day. N.T. Trial, 11/21/14, at 139-40. Just as with the length of time pizza was on the steps, to the extent it is even relevant, a jury would have to speculate as to how long the elevator was not working on the day of Appellant's fall. This, of course, is not permissible. **See, e.g., Brinich v. Jencka**, 757 A.2d at 402 ("A jury . . . is not permitted to reach its verdict based on mere conjecture or speculation.").

cases, the plaintiffs fell on produce in the produce sections of grocery stores. Obviously, the proprietors of those stores knew that the produce was present in their stores and, in fact, supplied the produce for its customers. Here, however, we have a partially eaten piece of pizza on the stairwell of an apartment building. While Appellee took reasonable measures to keep the premises safe—both through twice-daily inspections by its employee, Michael Jackson and by virtue of the fact other employees would pick up items if they saw them—a jury could not reasonably determine that Appellee should expect a phantom piece of pizza to be discarded on the steps of one of its residential apartment buildings. Appellant's first issue fails for lack of merit.

In her second issue, Appellant claims the trial court erred or abused its discretion by granting a nonsuit because evidence supports a finding that the trash was traceable to Appellee's conduct. While acknowledging Appellee did not actually put trash on the steps, Appellant contends Appellee "created the conditions which made it likely the trash would accumulate on the steps." Appellant's Brief at 18. In particular, Appellant suggests that Appellee knew "by having elevators that hardly worked and no interior trash cans that trash accumulates on the steps on a regular basis." *Id.* Because Appellant mischaracterizes the testimony, we must reject her assertion.

While there was testimony that items such as gum wrappers and papers could be found on occasion around the apartment complex,

Appellee's employees explained that they monitored the property and would pick up items as they found them. With regard to interior trash cans, one of Appellee's property managers explained that the only interior trash cans were located in the lower level laundry rooms. Having trash cans in the hallways "would be the worse [sic] thing we could do" because "we want the trash outside the building, not inside." N.T. Trial, 11/12/14, at 90. There was no testimony offered by Appellant to support a finding that Appellee's actions—whether in terms of the frequency of stairwell inspections or location of trash facilities—fell below the standard of care for a possessor of property set forth in the Restatement (Second) of Torts, § 343. Even accepting Appellant's testimony that items such as juice bottles and chip bags were sometimes encountered in the stairwell, there was no suggestion that "trash accumulates on the steps on a regular basis" or that Appellee did not take reasonable measures to keep the stairwells safe.[4] Moreover, the

_____

[4] The testimony most strongly supporting Appellant's "harmful condition" argument came from Appellant and from Maureen Loughery, mother of the children for whom Appellant babysat. Appellant testified that she saw trash on the floor, "even in the elevators," three or four times per week, "you know, the kids, they just leave it there sometimes in the evening." N.T. Trial, 11/12/14, at 137-38. Maureen Loughery explained that the trash was "not a big enough problem where I complained about it, but there was trash," usually "where the steps were and the landings . . . [, a]t least once a month, but it could have been more." N.T. Trial, 11/10/14, at 143-44. Ms. Loughery was asked about—and agreed with—her deposition testimony during which Appellee's counsel asked about her observations of trash on the interior stairs. During the deposition she indicated she saw trash "maybe once a month." When asked whether that would be "big piles of
*(Footnote Continued Next Page)*

- 11 -

fact elevators sometimes did not work was not shown to be the cause of Appellant's fall. The fact the elevator was not working on the night of Appellant's fall did not cause her to fall. A piece of pizza on greasy wax paper caused her to fall. Further, with regard to the elevator itself, by Appellant's own testimony it was working earlier in the day. N.T. Trial, 11/12/14, at 139-40. **See also** n.3, **supra.**

While Appellant argues that Appellee had notice of a harmful condition because it had a hand in creating it, that assertion simply is not supported by the evidence presented at trial, giving Appellant the benefit of all reasonable inferences. Appellant's second issue fails.

In her third issue, Appellant asserts trial court error or abuse of discretion for refusing to permit presentation of a contract theory of liability against Appellee. Appellant's argument is devoid of merit. A review of her complaint confirms that she asserted only negligence against Appellee. In fact, the complaint does not even mention a management agreement, perhaps because she was unaware of Appellee's status as property manager when she filed the complaint.[5] Appellant alleged her fall resulted from

_(Footnote Continued)_ ───────────────

trash or like a gum wrapper or piece of paper or something like that," she replied, "It varied. Sometimes it was like almost that somebody's trash bag broke open so there was like real trash. Sometimes it would just be candy wrappers or a cup." **Id.** at 166-67.

[5] Appellant's complaint asserts that Appellee is a Pennsylvania corporation that, "[a]t all relevant times, . . . owned, possessed, leased, rented,
_(Footnote Continued Next Page)_

Appellee's "carelessness and negligence" for, *e.g.*, failing to maintain and inspect the stairs properly, permitting a dangerous condition to exist for an unreasonable length of time, failing to inspect the steps for trash and/or debris, and failing to inspect and maintain the elevator. Appellant's Complaint at ¶ 9. There are no allegations in the complaint asserting any contract claims and Appellant did not seek leave to amend to raise them.[6]

The trial court explained its refusal to allow presentation of a breach of contract theory at trial, noting that "since [Appellant] is not a party to the management agreement or a 'specifically intended beneficiary' [Appellant] did not have standing to argue that [Appellee] was negligent for breach its responsibilities under the contract." Trial Court Memorandum, 1/5/15, at 7 (citations to Notes of Testimony omitted). The trial court distinguished the case relied on by Appellant, **Evans v. Otis Elevator Co.**, 168 A.2d 573, 575 (1961), as a case in which the "plaintiff was *actually*, and *literally*, injured *by* the elevator itself, not because plaintiff was injured taking an alternate route as a result of the out of service elevator." **Id.** (emphasis in original).

---

*(Footnote Continued)*

managed, controlled and/or maintained the premises of [the apartment] . . ." Appellant's Complaint at ¶¶ 2-3.

[6] Not only was the complaint silent as to a maintenance agreement or any breach thereof, but also no copy of the agreement was attached to the complaint, as mandated by Pa.R.C.P. 1019(h) and (i) for claims based upon an agreement.

We find no error of law or abuse of discretion in the trial court's ruling. The Appellant filed a complaint sounding in negligence and she was appropriately limited at trial to the only theory of liability she advanced in her pleadings.

We find no error of law or abuse of discretion in the trial court's grant of a nonsuit in favor of Appellee. Therefore, we affirm the judgment entered on January 28, 2015.

Judgment affirmed.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge Strassburger files a concurring and dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2016