J-A16020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROBIN CRAWFORD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GROCERY OUTLET BARGAIN MARKET | : | No. 405 EDA 2022 |

Appeal from the Judgment Entered November 8, 2021
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2019-007357

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED JULY 20, 2022**

Robin Crawford (Appellant) appeals from the November 8, 2021, judgment[1] entered against her and in favor of Grocery Outlet Bargain Market (Grocery Outlet) in a premises liability action. Appellant claims "the trial court erred when it declined to recognize that the [purported] spoilation of relevant photographic and video evidence created[d] a dispute of material fact that

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We corrected the caption to reflect that this is an appeal from a judgment rather than an order. The order, dated November 4, 2021 and docketed November 8th, granted Grocery Outlet's motion for summary judgment, dismissed Appellant's complaint with prejudice, and entered judgment in favor of the business. *See* Order Granting Motion for Summary Judgment (Order), 11/8/21, at 10. Since the order entered judgment on all claims and for all parties, it was immediately appealable.

preclude[d] summary judgment." Appellant's Brief at 11. Based on the following, we affirm.

This case stems from a slip-and-fall incident on a Sunday night in July 2018 at the entrance of Grocery Outlet's store in Sharon Hill, Pennsylvania. *See* Order at 1. Appellant "allege[d] that she tripped and fell due to a defective condition of the carpet located at the front entrance of the store." *Id.* As a result of the fall, she injured her elbow, knee, thumb, and shoulder. *See* Customer Accident Report, 7/28/19, at 1 (unpaginated).

An employee, Jahmir Slaughter, was working that evening in the parking lot area but he did not observe the incident. *See* Order at 1. According to Slaughter's statement, he heard Appellant utter an expletive and he subsequently saw her rise from the ground. He yelled to Appellant, asking if she was okay, and she replied in the affirmative. *See* Customer Accident Report at 2 (unpaginated). Another employee, Najeena Larue, was working that night but also did not witness the accident. *See* Order at 1. "Larue filled out an incident report and Slaughter provided a written statement." *Id.* Larue also inspected the location at issue immediately following the accident and took three photographs. *See* Customer Accident Report at 1 (unpaginated). She indicated the location was clean and dry, and lacked water puddles and obstructions. *Id.*

The following day, the store manager, Lori Ann Yates, reviewed the video footage taken by the store's surveillance cameras, downloaded the

videos to a data storage device called a flash drive, and sent the flash drive, incident report, and Slaughter's statement to Grocery Outlet's corporate office. Notably, the video footage only pertained to events that occurred after the incident. There was no video footage as to the condition of the area before Appellant's fall or her actual fall. *See* Deposition of Lori Ann Yates, 6/23/21, 6-17.

In June 2019, Appellant filed a lawsuit against Grocery Outlet.[2] In the complaint, Appellant raised a single count of negligence, alleging her accident resulted from "the defective condition of the walking surface[, specifically the condition of the rug/carpet,] within the store." Civil Action Complaint, 6/7/09, at ¶ 4. She further averred Grocery Outlet "had actual and/or constructive notice of the aforementioned dangerous condition of the rug/carpet." *Id.* at ¶ 7.

Pleadings and discovery were exchanged between the parties. Appellant Yates both were deposed on March 18, 2021, and June 23, 2021, respectively. In response to Appellant's request for documents, the items that were identified and produced were the accident report, Slaughter's statement, and the surveillance video. While the accident report indicated that three photographs were taken by Larue, those items were not produced. Moreover,

_____

[2] Appellant originally filed the lawsuit in Philadelphia County. The matter was subsequently transferred to Delaware County.

as noted above, the video files that were produced did not include any video of the fall itself.

Grocery Outlet filed a motion for summary judgment and a supplemental brief in support of its motion, alleging Appellant failed to establish a *prima facie* case of negligence and that she could not prove that Grocery Outlet had the requisite notice of the alleged defective condition. **See** Defendant Grocery Outlet Bargain Market's Motion for Summary Judgment, 4/29/21, at 3-5. Grocery Outlet maintained that the materials produced by Appellant, including her deposition testimony and written discovery responses, did not meet the burden of proof as to the cause of her fall. **See id.** at 3-4. Grocery Outlet also argued in the alternative that if there was a defective condition with respect to the rug, there was no evidence that it had actual or constructive notice of the condition. **See id.** at 4-5. Grocery Outlet concluded that there was no dispute of material fact – no reasonable jury could find that it had constructive notice of the dangerous condition of the rug prior to Appellant's fall and therefore, without such notice, it could not have breached any duty of care to Appellant. **See id.** at 5.

Appellant filed a response and an amended response, arguing that Grocery Outlet failed to preserve and produce critical evidence: (1) the three photographs taken by its employee Larue; (2) Slaughter and Larue for depositions; (3) full video of Appellant's incident at the store, including footage prior to her entering the store and her actual fall. **See** Plaintiff's Response to

Defendant's Motion for Summary Judgment, 5/18/21, at 4-7 (unpaginated). She contended this missing evidence created factual disputes in that case that precluded the entry of summary judgment. *See id.* at 7 (unpaginated). Appellant also requested a spoliation sanction in the form of an adverse inference instruction for Grocery Outlet's failure to preserve the missing photographs. *See* Plaintiff's Amended Response to Defendant's Motion for Summary Judgment, 9/24/21, at 5-6 (unpaginated).

Oral argument was held, *via* Microsoft Teams[3] videoconference, on October 18, 2021.

On November 8, 2021, the trial court entered an order granting Grocery Outlet's motion for summary judgment. The court first pointed to the admissions made by Appellant at her deposition: (1) she could see where she was walking and there was nothing obstructing her vision; (2) the store was well lit and there was nothing on the ground obstructing her path; (3) she was walking towards the store when she tripped, tried to catch her balance, and then fell directly in the front door; (4) she could not recall if the rug was lying flat on the ground prior to her fall; (5) she did not observe any wetness or oil on the rug; (6) prior to her fall, she did not notice any curled up edges in the rug; (7) she observed the rug was rolled up or curled after she fell; and (8) she saw the bumps and raises after she fell. *See* Order at 4-5. The court

_____

[3] An internet technology application.

also noted her answers to Grocery Outlet's interrogatories — she was caused to fall by a black rug, she was not aware of any obstruction that would have prevented her from observing the condition that caused the fall, and she was not able to take any action to avoid tripping because she was not aware of the condition until it caused her to fall. *Id.* at 5.

The court found that based on Appellant's testimony, in which confirmed that "she observed 'bumps and raises' in the rug after her fall, a doubt [was] raised as to the existence of a defective condition in the rug, and therefore it must be resolved against the moving party — here, [Grocery Outlet. Appellant was] entitled to a reasonable inference that the 'bumps and raises' in the rug *caused* [her] to fall." Order at 6-7 (footnote omitted; italics in original). The court then stated it could "not draw the same inference with respect to [Grocery Outlet]'s alleged notice of the alleged defective condition." *Id.* at 7. The court further determined there was no indication "of intentional destruction of evidence" and that Appellant did not demonstrate that "an issue of fact exist[ed] to support the inference that [Grocery Outlet] had notice of the rug's defective condition." *Id.* at 10. The court further concluded that "a spoliation-based inference would be inappropriate in this case and [could not] save the claim" from entry of summary judgment. *Id.* The court then dismissed Appellant's complaint with prejudice and entered judgment in favor of Grocery Outlet and against Appellant. *Id.*

Appellant raises the following issue on appeal:

> 1. Did the trial court err in finding no genuine issue of material facts, despite [Grocery Outlet]'s failure to preserve material evidence in the form [of] video and photographic evidence?

Appellant's Brief at 4.

As a prefatory matter, we address whether we have jurisdiction to review this appeal. Grocery Outlet alleges that Appellant's notice of appeal was untimely filed. *See* Grocery Outlet's Brief at 14-16. "Except as otherwise prescribed by [Pa.R.A.P. 903], the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). In civil matters, the 30-day period begins when the order has been entered upon the appropriate docket and notice of the order's entry was provided to the parties pursuant to Pennsylvania Rule of Civil Procedure 236. *See* Pa.R.C.P. 236(a)(2) (providing that the prothonotary "shall immediately give written notice of the entry of . . . any other order or judgment to each party's attorney of record[,]" and that the notice shall include a copy of the order or judgment); Pa.R.C.P. 236(b) ("The prothonotary shall note in the docket the giving of the notice[.]"); *see also Frazier v. City of Philadelphia*, 735 A.2d 113, 115 (Pa. 1999) (concluding "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given."). "Further, we are unable to deem an appeal timely except under the narrowest of circumstances in which counsel for the offending party can establish either a breakdown in the operations of the judicial support system or extenuating circumstances that rendered him

incapable of filing the necessary notice." ***Sass v. Amtrust Bank***, 74 A.3d 1054, 1063 (Pa. Super. 2013). ***See also Commonwealth v. Stansbury***, 219 A.3d 157, 160 (Pa. Super. 2019) ("We have many times declined to quash an appeal when the defect resulted from an appellant's acting in accordance with misinformation relayed to him by the trial court."), *appeal denied*, 235 A.3d 1073 (Pa. 2020).

The order in the present matter was entered on November 8, 2021, and Rule 236 notice was provided that same day; therefore, Appellant had until December 8th to file a notice of appeal. Appellant's notice of appeal was filed on December 10th making it facially untimely.

In Appellant's docketing statement, she indicated that her notice of appeal was originally filed electronically on November 23, 2021. ***See*** Notice to the Court, 2/16/22, at 1 (unpaginated). She further states:

> That electronic filing was rejected because Delaware County does not accept electronic appeals. The rejection notification from the [c]ourt stated that a hard copy must be filed, and the date of November 23, 2021, would be reflected as the filing date. Unfortunately, the hardcopy filing did not receive a filing date of November 23, 2021, therefore the docket is incorrect.

***Id.*** at 1-2 (unpaginated). Appellant attached an email supporting her statements to the document. ***See id.***

Based on Appellant's explanation, we conclude there was a breakdown in the court operations, and we will consider her appeal timely filed. ***See Sass***, 74 A.3d at 1063. As such, we may now turn to the merits of the appeal.

Appellant complains the trial court erred in granting summary judgment because there were material facts in dispute as to Grocery Outlet's constructive notice of the carpet's defective condition. ***See*** Appellant's Brief at 11. Appellant further argues that Grocery Outlet's failure to produce video pertaining to before and at the time of Appellant's fall amounts to spoliation of relevant evidence that would have created a material fact. She states:

> Despite Ms. Yates downloading the video footage from fourteen (14) cameras that evening, and submitting them to corporate offices, Grocery Outlet did not produce **any video of the fall itself nor** the events leading up to it. Among the fourteen (14) camera angles is one that recorded [the area where Appellant fell, but not when she fell[4]]. **That video would have shown the fall itself, the condition of the carpet before the fall, and employee Slaughter exit the store to the parking lot prior to [Appellant] falling**. At the time of the fall, employee Slaughter was in the parking lot pushing shopping carts. The store video cameras capture the carpet and entry area where [Appellant] fell. **The video would have shown Slaughter walk right by the carpet as he exited the store. This would have shed light on the issue of notice. The missing video would have shown the condition of the carpet just prior to the fall.** This would have shed light on any issues of comparative negligence. The missing video would have shown the fall itself. All of these questions of fact loom for the simple reason that Grocery Outlet did not preserve any of the video **prior** to the fall. [Appellant] is entitled to the inference that the missing video would have been unfavorable to Grocery Outlet, and that creates a question of fact that precludes summary judgment.

***Id.*** at 13-14 (some emphasis added; record citations omitted). Appellant also argues Grocery Outlet failed to produce the three photographs that were taken immediately after the fall and documented in the incident report. ***See id.*** at

---

[4] ***See*** N.T., 10/18/21, at 17.

15. Appellant claims that the "selective production of video" and the "failure to preserve the photographs" amounted to spoliation of the evidence. *Id.* at 16.

Appellant further contends that the court's reliance on ***Phillips v. Covenant Clinic***, 625 N.W.2d 714 (Iowa 2001), for the proposition that a "plaintiff must show intentional destruction of the record to have reasonable inferences drawn in her favor," is misplaced. Appellant's Brief at 12-13 (citation omitted). Appellant asserts that case "is not the law of Pennsylvania" and "it is an impossible standard." *Id.* at 13. Appellant alleges, "Even if the parties had done exhaustive discovery on the reasons for the missing evidence, absent a confession or admission of nefarious behavior, [Appellant] could never know or prove if the critical evidence was in fact intentionally destroyed." *Id.* She claims she is entitled to a spoliation inference, which would have created a question of fact that could not be resolved as a matter of law. *Id.*

Our review of an order granting summary judgment is guided by the following:

> When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may

grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion. . . .

*Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 136–37 (Pa. 2019) (citations and quotation marks omitted). "[T]he trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation." *Krishack v. Milton Hershey School*, 145 A.3d 762, 766 (Pa. Super. 2016) (citation omitted).

In a negligence action, a plaintiff must prove the following elements: "(1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) the defendant breached that duty; (3) a causal connection existed between the defendant's conduct and the resulting injury; and (4) actual damages occurred." *Grove v. Port Auth.*, 218 A.3d 877, 889 (Pa. 2019) (citation and quotation marks omitted).

"The burden of proving the existence of negligence rests upon the party who has asserted it." *Schmoyer by Schmoyer v. Mexico Forge, Inc.*, 649 A.2d 705, 707 (Pa. Super. 1994). "The mere fact that an accident has occurred does not entitle the injured person to a verdict. A plaintiff must show that the defendant owed a duty of care, and that this duty was breached." *Rauch v. Mike-Mayer*, 783 A.2d 815, 824 n.8 (Pa. Super. 2001) (citations omitted). "The nature of the duty which is owed in any given situation hinges primarily upon the relationship between the parties at the time of the plaintiff's

injury. The standard of care that a possessor of land owes to one who enters upon the land depends upon whether the entrant is a trespasser, a licensee or an invitee." ***Estate of Swift by Swift v. Northeastern Hosp.***, 690 A.2d 719, 722 (Pa. Super. 1997) (citations omitted).

Neither party disputes Appellant was a business invitee of Grocery Outlet at the time of her fall. ***See Walker v. Drexel Univ.***, 971 A.2d 521, 524 n.1 (2009) ("A business invitee is a person who is invited to enter or remain on the land of another for a purpose directly or indirectly connected with business dealings with the possessor of the land.") (citation omitted). "The duty of care owed to a business invitee (or business visitor) is the highest duty owed to any entrant upon land." ***Gutteridge v. A.P. Green Servs., Inc.***, 804 A.2d 643, 656 (Pa. Super. 2002) (citation omitted). It requires a possessor of land to protect the invitee from known dangers, as well as "those which might be discovered with reasonable care. ***Id.*** (citation omitted).

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> > (c) fails to exercise reasonable care to protect them against the danger.

***Rodriguez v. Kravco Simon Co.***, 111 A.3d 1191, 1193 (Pa. Super. 2015), *quoting* Restatement (Second) of Torts § 343 (1965).

- 12 -

In order to recover damages in a "slip and fall" case . . . the invitee must present evidence which proves that the **store owner deviated in some way from his duty of reasonable care** under the existing circumstances. This evidence must show that the proprietor knew, or in the exercise of reasonable care should have known, of the existence of the harmful condition. **Section 343 also requires the invitee to prove either that the store owner helped to create the harmful condition, or that it had actual or constructive notice of the condition**.

*Zito v. Merit Outlet Stores*, 647 A.2d 573, 575 (Pa. Super. 1994) (emphasis added; citations omitted). Nevertheless, this Court has previously explained that a business owner "is not an insurer of the safety of its customers" and

the mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence.

*Myers v. Penn Traffic Co.*, 606 A.2d 926, 928 (Pa. Super. 1992) (*en banc*) (citation omitted).

Because this case turns on the issue of whether Grocery Outlet had constructive notice of the defective carpet, we note the following:

What constitutes **constructive notice** must depend on the circumstances of each case, but one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident. The **relative durability of the defect** comprises a related factor. For example, in *Rogers*[ *v. Horn & Hardart Baking Co.,* 127 A.2d 762, 764 (Pa. Super. 1956),] we held that spilt soup on the floor was too transitory a condition to charge the defendant with notice. Much differently, in *Hartigan*[ *v. Clark*, 165 A.2d 647, 652 (Pa. 1960),] our Supreme Court held that a store patron who tripped on a raised metal strip on a stair could charge the proprietor with notice because of the durability of the condition, if a witness saw the defect immediately thereafter.

In sum, to charge a defendant store with constructive notice of a harmful condition a plaintiff need not produce positive testimony as to how long the defect existed if: (1) **the defect is of a type with an inherently sustained duration**, as opposed to a transitory spill which could have occurred an instant before the accident; and (2) **a witness saw the defect immediately before or after the accident**.

***Neve v. Insalaco's***, 771 A.2d 786, 791 (Pa. Super. 2001) (some citations and quotation marks omitted; emphases added).

Here, the trial court found the following:

[Appellant] has not established that [Grocery Outlet] had actual or constructive notice of the alleged defect in the rug. [Appellant] has neither testified to nor provided any evidence regarding the amount of time the rug constituted a dangerous condition. Rather, she testified:

> I pulled up to Grocery Outlet, parked my car. I got out. I'm walking towards the store, towards the door and then all I know is I'm tripped. I'm falling. I'm tripping and I'm trying to catch my balance and the doors open. As they open, I fell directly in the front door.

[Appellant] also testified that she did not observe any defect in the rug nor obstruction *prior* to falling. [Appellant] has presented no evidence that [Grocery Outlet] had notice of the alleged defective condition of the rug. She merely alleges in her Complaint that "[Grocery Outlet] had actual and/or constructive notice of the aforementioned dangerous condition of the rug" but has provided no evidence or testimony to support the allegation. Without evidence concerning *when* the rug became dangerous, a fact-finder could only speculate as to [Grocery Outlet]'s ability to discover and correct the problem. . . . Because there is no issue of material fact regarding whether [Grocery Outlet] had notice of the rug's defective condition, [Grocery Outlet] did not breach any duty to [Appellant] and summary judgment must be granted.

Order at 8 (citations omitted; italics in original).

We conclude the trial court did not err when it granted summary judgment in favor of Grocery Outlet. The only evidence before the court concerning Grocery Outlet's notice, or lack thereof, of the defective carpet was: (1) Appellant's deposition testimony that (a) there was nothing obstructing her vision or path while she was walking into the store, (b) the store was well lit, (c) she did not observe any problematic or defective conditions concerning the rug or the area surrounding it prior to her fall, and (d) it was not until after she fell that she observed the rug was rolled up or curled, and had the bumps and raises; and (2) Larue's store incident report which indicated the location was clean and dry, and lacked water puddles and obstructions. *See* Order at 4-6. Moreover, Appellant presented no evidence addressing the requirements for proving constructive notice – that "the defect [was] of a type with an inherently sustained duration" and "a witness saw the defect immediately before or after the accident." *Neve*, 771 A.2d at 791. Viewed in the light most favorable to Appellant as the non-movant, none of these proffered facts suggest Grocery Outlet knew or should have known about the defective rug.

As noted above, part of Appellant's argument is her allegation that the absence of evidence was the result of Grocery Outlet's purported spoliation of video and photographic evidence, and that this missing evidence would create an issue of material fact. In addition to alleging that the video would have shown the "condition of the carpet before the fall," Appellant surmises that

- 15 -

"the video would have shown Slaughter walk right by the carpet as he exited the store," which would have demonstrated Grocery Outlet's notice of the alleged defective condition. *See* Appellant's Brief at 14.

"'Spoliation of evidence' is the non-preservation or significant alteration of evidence for pending or future litigation." *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011) (footnote omitted).

> The doctrine applies where relevant evidence has been lost or destroyed. Where a party destroys or loses proof that is pertinent to a lawsuit, a court may impose a variety of sanctions, among them entry of judgment against the offending party, exclusion of evidence, monetary penalties such as fines and attorney fees, and adverse inference instructions to the jury.

*Marshall v. Brown's IA, LLC*, 213 A.3d 263, 268 (Pa. Super. 2019) (citations and quotation marks omitted), *appeal denied*, 226 A.3d 568 (Pa. 2020).

"When reviewing a court's decision to grant or deny a spoliation sanction, we must determine whether the court abused its discretion." *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div.*, 781 A.2d 1263, 1269 (Pa. Super. 2001) (citation omitted).

> Where spoliation has occurred, the trial court must weigh three factors in assessing the proper penalty: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Marshall*, 213 A.3d at 268 (citation and quotation marks omitted).

In declining to find that this missing evidence would create an issue of material fact and that a spoliation inference was necessary, the trial court explained:

> [Appellant] has not proffered any case law to support this contention and the Court has not located any, either. Rather, case law appears to be to the contrary. For example, the Supreme Court of Iowa addressed [Appellant]'s exact argument in [**Phillips**, **supra**]. In **Phillips**, the plaintiff brought a wrongful death action against a hospital for her father's death. The **Phillips** Court granted summary judgment in favor of the defendant, concluding that the plaintiff presented insufficient facts to support the proximate cause element of her claim. The plaintiff appealed, claiming that the defendant's failure to produce relevant records within its control entitled her to an inference that the missing records contained evidence unfavorable to defendants, and that this inference gave rise to a genuine issue of material fact on the causation element. The Iowa Supreme Court found that **the rule of summary judgment—that all reasonable inferences must be drawn in the nonmovant[']s favor—applies only to factual inferences, not those grounded in legal principle.** The **Phillips** plaintiff was not entitled to a spoliation inference without showing the existence of a genuine issue of material fact supporting the inference. The **Phillips** Court held that the plaintiff must show intentional destruction of the record to have reasonable inferences drawn in her favor.
>
> In the absence of any case law to the contrary, this Court will adopt the line of reasoning outlined by the Iowa Supreme Court and declines to infer that a genuine issue of material fact exists due to the missing evidence. There is no evidence of intentional destruction of evidence in our case, nor has [Appellant] shown that an issue of fact exists to support the inference that [Grocery Outlet] had notice of the rug's defective condition. As such, a spoliation-based inference would be inappropriate in this case and cannot save the claim for entry of summary judgment.

Order at 9-10 (emphasis added; some citations omitted).

We agree with the court's conclusion for several reasons. First, to the extent Appellant speculates that the video would have shown Slaughter

- 17 -

walking past the defective rug and that as a result, an inference could be made that Grocery Outlet was on constructive notice by the employee's actions, we note that Appellant raises this specific allegation for the first time in her brief. It is well-established that "[i]ssues not raised in the [lower] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). **See also Citizens Nat. Bank of Evans City v. Gold**, 653 A.2d 1245, 1248 (Pa. Super. 1995) ("It is well-settled that a new theory of relief cannot be advanced for the first time on appeal."). Thus, Appellant has not preserved this argument for appellate review.

Second, it merits mention that at the October 18, 2021, oral argument proceeding, Appellant's counsel acknowledged the transient nature of the defective condition, arguing: "[T]he reason we don't have evidence of notice is because this isn't a dangerous condition of a sidewalk or a wearing down of something that would have taken place over time. This is a . . . **more transient condition**. And [Grocery Outlet is] is in control of the evidence that would have shown the **transient** condition, but didn't produce it." N.T., 10/18/21, at 26 (emphasis added). This acknowledgement contradicts what is required for the condition of the defect to put a party on constructive notice — the defect is of a type with "an inherently sustained duration, as opposed to a transitory spill which could have occurred an instant before the accident[.]" **Neve**, 771 A.2d at 791. Without alleging that the defective carpet was more

than a transient condition, Appellant could not prove that Grocery Outlet was on constructive notice.

Third, contrary to Appellant's argument that she could never know or prove if the critical evidence was in fact intentionally destroyed,[5] it merits mention that Appellant had the opportunity to question Yates at her deposition about her procedure for acquiring the video surveillance and sending it to the corporate office. When asked about watching the video and if Yates could see Appellant's fall, she said, "See and that's where I can't help you. I really don't remember. I really don't remember very much about this at all." Yates Deposition at 9. Counsel for Appellant also asked if there was an area of the store where a person would not be seen on the cameras,[6] but never inquired if the evidence at issue was lost or destroyed, *i.e.*, if Yates intentionally omitted video of prior to Appellant's fall or her fall when she sent the 14 videos to the corporate office, or if she sent the videos and Grocery Outlet failed to turn them over during discovery. Appellant also did not depose Larue or Slaughter[7] to determine if they were aware of the defective carpet. *See* N.T., 10/18/21, at 20-21. Critical questioning of these witnesses could have

_____

[5] *See* Appellant's Brief at 13.

[6] *See* Yates Deposition at 11.

[7] At the time of her deposition, Yates indicated that Larue and Slaughter were no longer employees of the store. *See* Yates Deposition at 7-8.

supported Appellant's argument on the matter at issue and Appellant's failure to fully pursue this is fatal to her claim.

Finally, as pointed out by the trial court, Appellant still has not produced any case law that provides for circumstances similar to the present case, wherein the nonmoving party alleges that missing evidence would create a factual issue. At oral argument, the following exchange occurred between the parties and the court:

> THE COURT: Did you ask [Grocery Outlet] to produce records related to the condition of the rug prior to the fall?
>
> *     *     *
>
> [Counsel for Appellant]: Yes. Yes, Your Honor. So, we requested documents, logs, reports, memos, or other information showing the people who would have inspected or maintained the area where [Appellant] fell in the 72 hours before she fell. We asked for documents, logs, reports, memos, or other information describing the condition of and the times thereof of the location of her fall for the 72 hours before the fall.
>
> THE COURT: Okay. And did you get any documents responsive to those particular requests?
>
> [Counsel for Appellant]: The only documents we received were the incident report.
>
> THE COURT: [Counsel for Grocery Outlet], any reason why those kinds of documents were not produced?
>
> [Counsel for Grocery Outlet]: No, because Ms. Yates testified in her deposition that's all the information that they kept at the store based on when it occurred. So, it would have been -- she testified to that. It would have been just the incident report, and obviously, the employees that were working at the time. There was nothing that she keeps at the store records wise that she would still have regarding the incident.

THE COURT: Okay. [Counsel for Appellant], any cases that you know of where a Court denied a Motion for Summary Judgment in a scenario like this where the non-movant essentially says, hey, the missing evidence would create a factual issue?

[Counsel for Appellant]: I apologize, Your Honor. I don't have any cases to -- I don't have any references to any cases right now.

N.T., 10/18/21, at 26-28.

A review of Appellant's brief does not indicate any case law that contradicts the court's finding, most importantly, the court's observation that "the rule of summary judgment — that all reasonable inferences must be drawn in the nonmovants favor — applies only to factual inferences, not those grounded in legal principle." Order at 9. While Appellant does cite **Rodriguez**, **supra**, for the notion that open questions about spoliation preclude the entry of summary judgment,[8] that case is distinguishable as it goes to an issue of material fact as opposed to a legal principle. In **Rodriguez**, a panel of this Court held that an open issue of spoliation, which was based on the absence of a maintenance log for the date of the plaintiff's fall, precluded summary judgment in favor of the defendant because the plaintiff presented evidence that housekeeping contractors were responsible for sweeping and spot mopping the floors on an hourly basis. **See Rodriguez**, 111 A.3d at 1196. Here, however, the record lacks any evidence to demonstrate Grocery Outlet destroyed or lost the pertinent evidence, we

_____

[8] See Appellant's Brief at 16.

discern no abuse on the trial court's part in declining to find a spoliation-based inference was appropriate. Appellant's sole issue on appeal is without merit.

We conclude the trial court properly granted summary judgment. Appellant was not entitled to a spoliation inference, and thus, was unable to establish a sufficient showing that Grocery Outlet had actual or constructive notice of the defective carpet. Appellant's theory of the case relies on nothing other than "conjecture, surmise, guess or speculation." **Krishack**, 145 A.3d at 766. Accordingly, we affirm the court's judgment entered in favor of Grocery Outlet.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2022