J-A27001-18

2019 PA Super 191

| HARRIET MARSHALL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BROWN'S IA, LLC | : | No. 2588 EDA 2017 |

Appeal from the Judgment Entered July 10, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  September Term, 2015 No. 03279

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

OPINION BY BOWES, J.:                                      **FILED JUNE 19, 2019**

Harriet Marshall appeals from the July 10, 2017 judgment in favor of Appellee Brown's IA, LLC, and alleges that she is entitled to a new trial because the trial court erred in refusing to give an adverse inference instruction based on Appellee's spoliation of videotape evidence.  We vacate the judgment and remand for a new trial.

Brown's IA, LLC ("ShopRite") owns thirteen grocery stores, one being the Island Avenue ShopRite in Philadelphia.  On August 6, 2014, Ms. Marshall slipped on water, fell in the produce aisle of the store, and aggravated a pre-existing injury to her hip and back.  ShopRite employees came to her aid and

summoned medical assistance, and the manager completed an incident report immediately thereafter.[1]

Approximately two weeks later, ShopRite received a letter of representation from Ms. Marshall's counsel requesting that ShopRite retain, *inter alia*, surveillance video of the accident and area in question for six hours prior to the accident and three hours after the accident. Additionally, the letter cautioned:

> If any of the above evidence exists, and you fail to maintain same until the disposition of this claim, it will be assumed that you have intentionally destroyed and/or disposed of evidence. Please be advised that you are not permitted, and are in no position, to decide what evidence plaintiff would like to review for this case. Accordingly, discarding any of the above evidence will lead to an Adverse Inference against you in this matter.

Plaintiff's Exhibit 3 (letter from counsel, 8/18/14, at 1).

Ms. Marshall's slip and fall was captured on the store's video surveillance system. However, ShopRite decided to preserve only thirty-seven minutes of video prior to Ms. Marshall's fall and approximately twenty minutes after, and permitted the remainder to be automatically overwritten after thirty days. Subsequently, counsel for ShopRite told the jury in his opening statement

---

[1] The incident report was prepared by Ashley Jones, the Human Resources Manager. She noted therein that Ms. Marshall stated that she was getting a pepper in the produce department when she slipped and fell on water. Ms. Jones testified at trial that although she could not remember seeing water on the floor, "[i]f I didn't see it then I would put that on the report." N.T. Jury Trial, 1/12/17, at 76, 78. The report contained no such notation.

that, "it isn't possible to tell from the video if there was water on the floor, how it got there or when it got there." N.T. Jury Trial, 8/6/14, at 42.[2]

ShopRite's Risk Manager, Matthew McCaffery, testified that it was ShopRite's "rule of thumb" to preserve video surveillance from twenty minutes before and twenty minutes after a fall. He opined that the video produced was sufficient to see the defective condition if it could be seen at all. Since the substance on the floor could not be seen on the retained portion of the video, he maintained it "would be a fool's errand" to go back several hours as requested. N.T. Jury Trial, 1/13/17, at 35. He added that it was impractical and costly to retain the requested six hours of pre-incident videotape.

At trial, ShopRite offered evidence of its reasonable care in keeping the store premises safe for customers. Managers testified that employees were trained in the importance of preventing slip and falls, and described financial incentives for employees who located and cleaned up spills. The store also uses the Gleason system, an electronic monitoring system whereby, once per hour, an employee walks around the store on a designated route that passes thirty-five buttons. As the employee inspects the floor in each area near the button, he or she uses an electronic wand to press the button indicating whether there was a wet spill, dry spill, or the area was clear. The system

---

[2] At the close of Plaintiff's case, ShopRite moved for a non-suit, alleging that there was no evidence as to how the liquid got on the floor or how long it was there. The trial court denied the nonsuit.

creates a log for each of the walk-throughs. The Gleason logs for the day of Ms. Marshall's fall indicated that the produce area where she fell was inspected from 7:07:52 a.m. to 7:09:59 a.m., and again at 8:01:42 a.m. through 8:05:34 a.m. Trial Exhibit P-2. Ms. Marshall fell at approximately 8:54 a.m., almost fifty minutes after the last Gleason inspection.

Ms. Marshall contended below that ShopRite's conscious decision not to retain the video evidence constituted spoliation, and she asked the trial court to give an adverse inference charge to the jury.[3] N.T. Jury Trial, 1/14/17, at 14. ShopRite argued there was no relevant evidence disposed of as the video did not show drops of water on the floor, and furthermore, it did not act in bad faith in deleting the additional video requested. The trial court observed first that the fact that the video was requested did not make it relevant. It concluded further that there was no bad faith on the part of ShopRite, and refused to give the requested adverse inference charge. The court did agree, however, that Ms. Marshall's counsel could argue to the jury that it should infer from ShopRite's decision not to retain more of the video prior to Ms. Marshall's fall that the video was damaging to ShopRite.

---

[3] Pa.S.S.J.I. 5.60, relating to spoliation of evidence, provides:

> If a party disposes of a piece of evidence before the other party had an opportunity to inspect it, and the party who disposed of the evidence should have recognized the evidence was relevant to an issue in this lawsuit, then you may find that this evidence would have been unfavorable to them, unless they satisfactorily explain why they disposed of this evidence.

Counsel for Ms. Marshall told the jury in closing argument that ShopRite made the conscious decision not to keep the video because it was harmful to them, and that the water was on the floor long enough that, with reasonable care, they should have seen and remedied it. Defense counsel countered,

> But you have seen the video, you have seen the quality of the video. Is there really any expectation that if more video had been saved that we would have seen something, we would have seen when this obviously small spot of water that you can't even see on the floor could have gotten on the floor?

N.T. Jury Trial, 1/17/17, at 71.

The jury returned a verdict in favor of ShopRite, finding no negligence. Ms. Marshall filed timely post-trial motions alleging that she was entitled to a new trial because the trial court erred in refusing to give the requested spoliation instruction to the jury. The motion was deemed denied pursuant to Pa.R.C.P. 227.4(1)(b), when more than one hundred and twenty days elapsed and the trial court did not rule on the motion. Judgment was entered on July 10, 2017, and Ms. Marshall timely appealed. She raises one question for our review:

> [ShopRite] deliberately failed to retain (i.e., destroyed) relevant and material video surveillance evidence which, if preserved, would have established: a) when the dangerous condition that caused [Ms. Marshall] to slip and fall came into existence; and b) whether [ShopRite] fulfilled its duty to make its supermarket safe for customers by adhering to its policies and procedures of inspecting for and removing defects, as it claims to have done. Given this fact, did the trial court abuse its discretion by declining to read a spoliation of evidence instruction to the jury at trial?

Appellant's brief at 4.

At issue herein is whether the trial court erred in refusing a requested adverse inference instruction based on ShopRite's alleged spoliation of video surveillance evidence. We review trial court rulings on spoliation claims for an abuse of discretion. *Mt. Olivet Tabernacle Church v. Edwin L. Wiegand Div.*, 781 A.2d 1263, 1269 (Pa.Super. 2001).

Our Supreme Court defined spoliation of evidence in *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011), as "the non-preservation or significant alteration of evidence for pending or future litigation[,]" and authorized "trial courts to exercise their discretion to impose a range of sanctions against the spoliator." *See Schroeder v. Commonwealth Department of Transportation*, 710 A.2d 23, 27 (Pa. 1998). The doctrine applies "where 'relevant evidence' has been lost or destroyed." *Mount Olivet*, *supra* at 1270. Where a party destroys or loses proof that is pertinent to a lawsuit, a court may impose a variety of sanctions, among them "entry of judgment against the offending party, exclusion of evidence, monetary penalties such as fines and attorney fees, and adverse inference instructions to the jury." *Hammons v. Ethicon, Inc.*, 190 A.3d 1248, 1281 (Pa.Super. 2018) (quoting *Mt. Olivet*, *supra* at 1272-73).

As we recently noted in *Rodriguez v. Kravco Simon Co.*, 111 A.3d 1191 (Pa.Super. 2015), penalties for spoliation have been imposed since the early 17th century. The doctrine "attempts to compensate those whose legal rights are impaired by the destruction of evidence by creating an adverse

inference against the party responsible for the destruction." ***Duquesne Light v. Woodland Hills Sch. Dist.***, 700 A.2d 1038, 1050 (Pa.Cmwlth. 1997). When we review the propriety of a sanction, "we must determine whether the court abused its discretion." ***Parr v. Ford Motor Co.***, 109 A.3d 682, 701 (Pa.Super. 2014) (*en banc*).

The duty to retain evidence is established where a party "knows that litigation is pending or likely" and "it is foreseeable that discarding the evidence would be prejudicial" to the other party. ***Mt. Olivet***, ***supra*** at 1270-71. Where spoliation has occurred, the trial court must weigh three factors in assessing the proper penalty: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." ***Parr***, ***supra*** at 702.

In its opinion, the trial court concluded, "[b]ased upon Mr. McCaffery's testimony and the surveillance video itself, . . . that no relevant evidence was spoliated" and that ShopRite did not act in bad faith. Trial Court Opinion, 4/4/18, at 6. It further justified its ruling by relying upon ***PTSI, Inc. v. Haley***, 71 A.3d 304 (Pa.Super. 2013), and the proportionality standard from the 2012

Explanatory Comment preceding Pa.R.C.P. 4009.1, governing the discovery

of electronic information.[4]

---

[4] The 2012 Explanatory Comment to Pa.R.C.P. 4009.1 provides in relevant part:

. . . .

B. Proportionality Standard

As with all other discovery, electronically stored information is governed by a proportionality standard in order that discovery obligations are consistent with the just, speedy and inexpensive determination and resolution of litigation disputes. The proportionality standard requires the court, within the framework of the purpose of discovery of giving each party the opportunity to prepare its case, to consider: (i) the nature and scope of the litigation, including the importance and complexity of the issues and the amounts at stake; (ii) the relevance of electronically stored information and its importance to the court's adjudication in the given case; (iii) the cost, burden, and delay that may be imposed on the parties to deal with electronically stored information; (iv) the ease of producing electronically stored information and whether substantially similar information is available with less burden; and (v) any other factors relevant under the circumstances.

C. Tools for Addressing Electronically Stored Information

Parties and courts may consider tools such as electronic searching, sampling, cost sharing, and non-waiver agreements to fairly allocate discovery burdens and costs. When utilizing nonwaiver agreements, parties may wish to incorporate those agreements into court orders to maximize protection vis-'a-vis third parties. ***See***, ***e.g.***, Fed. R. Evid. 502(c).

Explanatory Comment preceding Pa.R.C.P. 4009.1 (2012).

Ms. Marshall relies upon several authorities, including ***DeWeese v. Anchor Hocking Consumer and Industrial Products Group***, 628 A.2d 421 (Pa.Super. 1993), and ***Duquesne Light Co.***, ***supra*** in support of her contention that the rationale for the doctrine of spoliation is not limited to products liability cases, and is applicable herein. Ms. Marshall contends further that the trial court's reliance upon ***PTSI, Inc.***, ***supra,*** is misplaced as it is factually different from the situation herein. She points out that litigation was not pending or foreseeable when the defendants routinely deleted emails and text messages in ***PTSI, Inc.*** Furthermore, the preservation order in that case went into effect after the defendants left their employment at PTSI, and any potentially relevant electronic communications would have occurred while they were employed. She cites this Court's acknowledgment that people routinely delete electronically stored information to free up storage space on their devices, and that spoliation occurs only if the destruction of relevant evidence is intentional when litigation is pending or likely, which was not the case in ***PTSI, Inc.*** Even if proportionality was a proper consideration on the facts in this case, which Ms. Marshall does not concede, the benefit of retaining the vital videotape evidence far outweighed the burden and expense.

ShopRite argued that there was no spoliation and that no sanction was warranted because, in following its reasonable retention policy, it did not act in bad faith. It alleges that ***PTSI, Inc.*** is controlling, that the trial court correctly relied upon it and weighed the eDiscovery proportionality factors

found in the explanatory comment to Pa.R.C.P. 4009 and Pa. R.C.P. 4011,[5] in concluding that no instruction was warranted. According to ShopRite, Ms. Marshall's efforts attempt to distinguish **PTSI, Inc.** are unpersuasive, and the trial court did not misapply the proportionality factors or otherwise abuse its discretion in concluding that the instruction was not warranted.

In the instant case, counsel for Ms. Marshall contacted ShopRite within two weeks of her fall, advised it of impending litigation, and requested that it preserve six hours of video surveillance prior to her fall and three hours after her fall. Thus, ShopRite was on notice to retain the evidence for purposes of

---

[5] Pa.R.C.P. 4011, entitled "Limitation of Scope of Discovery," provides:

> No discovery, including discovery of electronically stored information, shall be permitted which

> (a)     is sought in bad faith;

> (b)     would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party;

> (c)     is beyond the scope of discovery as set forth in Rules 4003.1 through 4003.6;

> (d)     is prohibited by any law barring disclosure of mediation communications and mediation documents; or

> (e)     would require the making of an unreasonable investigation by the deponent or any party or witness.

litigation. Although Mr. McCaffery testified that ShopRite's rule of thumb was to retain only twenty minutes of tape prior to a fall and twenty minutes afterwards, it actually preserved thirty-seven minutes of footage prior to Ms. Marshall's fall, and twenty minutes after the fall. He offered no explanation why ShopRite deviated from its typical practice.

At trial, Ms. Marshall took the position that by failing to retain additional footage prior to her fall, ShopRite intentionally destroyed or failed to preserve relevant evidence. She maintained that she was prejudiced thereby, and that ShopRite should have been sanctioned for spoliation. In support of her contention that the additional video was relevant, she argued that it may have shown when the spill occurred. At the very least, she contended it would have been probative as to whether ShopRite's inspection and safety precautions were being followed. Ms. Marshall asked the court to instruct the jury that it could infer "that the destroyed evidence would have been unfavorable to the offending party." **Rodriguez**, **supra** at 1196.

Despite the deference accorded the trial court in such matters, we find no factual support in the record for the trial court's conclusion that no relevant evidence was destroyed. Furthermore, we find the trial court's view of relevant evidence to be unreasonably narrow. Relevant evidence is any evidence that "has any tendency to make a fact more or less probable." Pa.R.E. 401(a). While the trial court's finding of no bad faith on ShopRite's part was relevant in determining whether to impose a sanction, and if so, what

sanction to impose for spoliation, the absence of bad faith does not mean that spoliation did not occur

Ms. Marshall was a business visitor of ShopRite at the time of the fall and the store owed her the highest duty of care. The law is well settled that a "landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care." **Emge v. Hogosky**, 712 A.2d 315, 317 (Pa.Super. 1998) (citation omitted).

While a possessor of land is subject to liability for physical injury to his invitees due to a condition on his land, liability is predicated on a showing that the possessor

> (a) knows or by the exercise or reasonable care would discover the condition, and should realize that it involves an unreasonable risk to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

**Campisi v. Acme Mkts.**, 915 A.2d 117, 119 (Pa.Super. 2006); **see also** Restatement (Second) of Torts § 343.

The existence of a dangerous condition on property or the happening of an accident is not enough to establish liability. A plaintiff, in order to recover in a slip-and-fall case, must prove that the possessor of the premises knew, or with the exercise of reasonable care, should have known, of the existence of the harmful condition. Where a storeowner created the harmful condition,

he is deemed to have actual or constructive notice of the condition. *Zito v. Merit Outlet Stores*, 647 A.2d 573, 574-75 (Pa.Super. 1994). Where, however, the condition is one caused by a third party, a plaintiff must prove that the premises owner either knew of the danger and failed to remediate it, or should have known had it exercised reasonable care and inspected its premises.

A plaintiff's burden of proving knowledge or notice of the dangerous condition is a heavy one. In some instances, the ubiquitous use of video surveillance to monitor premises open to the public may be useful in meeting that burden. Video surveillance allows one to rewind and view the events prior to a slip and fall. It might show the fall, or reveal how, when, and by whom the dangerous condition was created. In other instances, poor video quality, camera placement, or the nature of the spill may make it impossible to see the hazard on the floor, as was the case herein.

Although Mr. McCaffery maintained that it would have been a waste of time to go back further in time as the substance on the floor was not visible anyway, we find no support for his assumption. Even where the camera fails to capture the offending substance on the floor, surveillance video still may have probative value in a slip-and-fall case. It might show someone dropping or spilling something on the floor in the area, although the residue is not visible. The events that occurred well in advance of the plaintiff's fall may be relevant to the defendant's knowledge or constructive notice or to whether

the defendant exercised reasonable care to keep his premises safe. By viewing video surveillance, one may be able to observe the people who frequented the area prior to the fall, perhaps even another person slipping in the same area. Where, as here, store personnel are identifiable by the color of their uniforms, the video may be instructive as to when an employee last entered the area of the dangerous condition. A defendant may be able to point to such evidence in support of its contention that it inspected the area at reasonable intervals. Where no store personnel are depicted for a considerable period, a plaintiff can use the video to argue that the defendant did not conduct regular inspections of the area prior to the fall. Additionally, the longer the duration of time store personnel were absent from the area, the stronger the plaintiff's argument that the defendant store should be charged with constructive notice of the danger, *i.e.*, that they would have discovered the hazardous condition had they inspected the area at reasonable intervals. Thus, video surveillance of the area for a more extended period prior to the fall may yield evidence highly probative of whether a premises owner had notice or whether he exercised reasonable care for the safety of business invitees.

We find that counsel's letter placed ShopRite on notice of impending litigation and that several hours of video surveillance prior to and after the fall was arguably relevant evidence. Nonetheless, ShopRite consciously decided to preserve only a fraction of the video requested because, as a "rule of

thumb," it usually retained only twenty minutes of video prior to a fall, and twenty minutes after.[6]  Furthermore, in this case, it arbitrarily preserved thirty-seven minutes of footage prior to the fall without any explanation as to why it deviated from its usual practice, why thirty-seven minutes in particular were preserved, or who made that decision.  According to Mr. McCaffery, Loss Prevention people actually clip the video.  He disavowed any knowledge of who made the decision to capture that particular timeframe, but "[i]t wasn't me."  N.T. Jury Trial, 1/13/17, at 33.

Notably, the thirty-seven minutes prior to Ms. Marshall's fall did not even encompass all of the fifty minutes that elapsed after the last Gleason inspection of the area.  Furthermore, conspicuously absent was testimony from anyone at ShopRite that he or she watched the video for the six-hour-period prior to the fall before determining that it did not contain any relevant evidence.  Nonetheless, ShopRite unilaterally determined that there was no relevant evidence on the deleted tape, and the court credited that conclusion.

_____

[6]  Mr. McCaffery testified that, "very rarely" are they able to pinpoint from the surveillance video when something gets on the floor.  N.T. Jury Trial, 1/13/17, at 46.  He added that the policy is to take photographs of spills and forward them to corporate.  *Id*. at 47.  Rosanna Feliz, a ShopRite employee, testified that she took photographs of the area where Ms. Marshall fell, and that she remembered a mark on the floor.  She downloaded the photographs to the computer, and forwarded them to Human Resources.  She stated at trial that she had no idea as to the whereabouts of the photographs; Mr. McCaffery stated that he looked for the photographs, but was unable to find them.  *Id*. at 48.

The record simply does not support the trial court's finding that no relevant evidence was destroyed.

We find that the video surveillance tape depicting the events in the several hours prior to her fall was relevant for showing far more than the offending substance on the floor.[7] The trial court's finding that there was no spoliation because ShopRite did not act in bad faith is based on an incorrect application of the doctrine. Spoliation may be negligent, reckless, or intentional; a party's bad faith, or lack of it, in the destruction of potentially relevant evidence goes to whether and what type of sanction should be imposed, not whether spoliation occurred.[8] **See Mt. Olivet**, **supra** at 1270 ('[T]he fault of the party who altered or destroyed the evidence, requires consideration of two components, the extent of the offending party's duty or

_____

[7] We agree with the trial court that the scope of relevant evidence is not defined by the plaintiff's request. However, neither is it defined by the "rule of thumb" of the premises owner. Our rules governing the scope of discovery generally, Pa.R.C.P. 4003.1 et seq., are instructive in this regard. We permit discovery of any matter, not privileged, which is relevant to the subject matter of the pending action. Relevance includes evidence that may relate to either the claim or a defense, even if it is not admissible, but is calculated to lead to admissible evidence.

[8] Although the trial court found no bad faith on the part of ShopRite, the record arguably supports a contrary finding based on ShopRite's failure to notify Ms. Marshall's counsel of its retention policy and its intention to preserve only a portion of the requested video, or offer to make the tape available for counsel's viewing prior to its destruction. **See Mount Olivet Tabernacle v. Edwin L. Wiegand Div.**, 781 A.2d 1263, 1271 (Pa.Super. 2001) (recognizing that although "the scope of the duty to preserve evidence is not boundless[,]" at a minimum, an interested party should be provided with an opportunity to inspect the evidence).

responsibility to preserve the relevant evidence, and the presence of absence of bad faith."). ShopRite unilaterally decided not to preserve arguably relevant evidence, and that constituted spoliation.

Finally, we find misplaced the trial court's reliance upon our decision in *PTSI, Inc.*, as the basis for applying eDiscovery proportionality factors on the facts herein. The issue in *PTSI, Inc.* was whether the trial court erred in refusing to sanction defendants for their routine deletion of emails and text messages that were subject to a preservation order and sought in discovery. After considering the scope of the litigation, the importance and complexity of the issues concerning the electronically stored information, the trial court concluded that these factors did "not weigh in favor of granting any discovery sanctions." *Id*. at 317.

Although this Court acknowledged the trial court's proportionality analysis in *PTSI, Inc.*, it was unnecessary for our resolution of the issue. Instead, we affirmed the trial court's judgment that no sanctions were warranted based on the following facts: there was no pending or foreseeable litigation and no preservation order in effect at the time when relevant emails and text messages were deleted; the deletion of electronic information was routine, not motivated by bad faith; and only non-relevant information was deleted, much of which could be obtained from other sources.

In contrast to the facts in *PTSI, Inc.*, ShopRite had notice of an impending lawsuit and that the video surveillance was relevant. ShopRite

unilaterally chose to preserve only a small fraction of the requested video and delete the remainder. At the very least, the deleted video footage was probative evidence of the condition of the premises prior to Ms. Marshall's fall, as well as ShopRite's due care, or lack of it, in keeping its premises safe for invitees. Similar evidence could not be obtained from any other source. Thus, we conclude that there is no legal or factual support for the trial court's finding that no relevant evidence was destroyed.

As we stated in **Mt. Olivet**, **supra** at 1269 (quoting **Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.**, 692 F.2d 214, 218 (1st Cir. 1982)), "[s]poliation sanctions arise out of 'the common sense observation that a party who has notice that evidence is relevant to litigation and who proceeds to destroy evidence is more likely to have been threatened by that evidence than is a party in the same position who does not destroy the evidence.'" Ms. Marshall asked the court for the least severe spoliation sanction, an adverse inference instruction. On the facts herein, it was warranted, and the court abused its discretion in refusing the charge.

Judgment vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/19/19