J-A08009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| TANYA MONARCA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANNIE'S EXPRESS LAUNDRY, LLC, | : | No. 2068 EDA 2019 |

Appeal from the Judgment Entered July 15, 2019
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2016-C-3360

| TANYA MONARCA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANNIE'S EXPRESS LAUNDRY, LLC, | : | No. 2072 EDA 2019 |

Appeal from the Judgment Entered July 15, 2019
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2016-C-3360

| TANYA MONARCA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANNIE'S EXPRESS LAUNDRY, LLC, | : | No. 2073 EDA 2019 |

Appeal from the Judgment Entered July 15, 2019
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2016-C-3360

BEFORE:  LAZARUS, J., KUNSELMAN, J., and McCAFFERY, J.

J-A08009-20

MEMORANDUM BY LAZARUS, J.:                          **FILED JUNE 10, 2020**

Tanya Monarca appeals from the judgment[1] entered in the Court of

Common Pleas of Lehigh County.  After careful review, we find that Monarca

is not entitled to relief.  Thus, we affirm.

> [Appellee] Annie's Express Laundry, LLC [("Annie's Express")] owns and operates a laundromat [in] Lehigh County[.]  [Monarca] was a regular patron of [Appellee]'s business.  She testified that she began going to Annie's Express in June of 2014.  She did her laundry there approximately two to three times per month.
>
> On December 8, 2014, [Monarca] and her fiancé parked their vehicle at the front door of the laundromat at approximately 5:50 p.m.  The door to the laundromat was propped open by a bucket filled with sand for patrons to deposit cigarettes. [Monarca] exited her vehicle from the front passenger side door and stepped in the direction of the bucket.  She testified that she noticed someone in a truck or vehicle parked about ten feet behind her vehicle which had caught her eye, and caused her to stop looking down as she turned to enter the laundromat.  As a result, she tripped on the bucket and fell over, landing on her right knee.  The bucket broke when she fell on it[,] and it scratched [Monarca]'s calf and her shin.[2]  [Monarca]'s fiancé then pushed the bucket back into a corner.  [Monarca] picked up a piece of the bucket and began

_____

[1] Monarca purported to appeal from three separate trial court orders—orders entered on February 26, 2019; June 10, 2019; and June 26, 2019—by filing a separate notice of appeal for each order on July 27, 2019.  The appeals were consolidated upon Monarca's request pursuant to Pa.R.A.P. 513.

The orders at issue were not final orders disposing of all claims of all parties until the trial court denied Monarca's motion for reconsideration—effectively, her motion for post-trial relief—on June 26, 2019.  These orders are subsumed by the judgment entered on July 15, 2019.  Thus, Monarca has timely filed her notice of appeal, which actually lies from the entry of judgment.  **_See_** Pa.R.A.P. 902 (requiring appeals be filed within 30 days after entry of order from which appeal is taken).  We have altered the caption accordingly.

[2] Footage from Annie's Express' surveillance system capturing the entirety of Monarca's time on the premises was presented to the jury at trial.

- 2 -

taking pictures of the scene with her phone. [Monarca] testified that shortly thereafter, she began experiencing pain in her legs and back.

Trial Court Opinion, 2/26/19, at 2-3.

In November 2016, Monarca filed a complaint alleging negligence against Annie's Express in connection with the trip-and-fall accident. On August 30, 2018, following a three-day trial, a jury returned a verdict in favor of Annie's Express based on its finding that Annie's Express was not negligent. Monarca timely filed a post-trial motion for a new trial, which the court denied on February 26, 2019. On March 4, 2019, Monarca filed a motion for reconsideration and a motion to compel Annie's Express to produce additional video footage discovery not presented at trial. Monarca explained that despite Annie's Express having filed its responsive brief to her post-trial motion on February 13, 2019, she never received service of the brief because it was allegedly sent to an incorrect address; consequently, Monarca was unable to file a timely reply brief before the court denied her post-trial motion. The court granted the reconsideration motion in order to enable Monarca to respond to Appellees' brief, which she did on April 4, 2019.

Following oral argument on June 4, 2019, the court issued an order on June 10, 2019, denying Monarca's request for additional discovery. In that order, the court also stayed its reconsideration of Monarca's post-trial motion pending this Court's en banc review of *Marshall v. Brown's IA, LLC*, 2588 EDA 2017 (Pa. Super. filed Mar. 27, 2019) (unpublished memorandum), a case involving a spoliation of evidence issue similar to one raised by Monarca

in her post-trial motion. ***See id.*** On June 19, 2019, this Court entered a decision in ***Marshall***. ***See Marshall v. Brown's IA, LLC***, 213 A.3d 263 (Pa. Super. 2019) (en banc) (holding spoliation of evidence instruction appropriate where plaintiff requested nine hours of video footage which included plaintiff's fall, warned defendant that failure to produce all requested footage would result in adverse inference, and defendant turned over small portion of requested footage). Thereafter, the trial court denied Monarca's motion for reconsideration on June 26, 2019, and entered judgment in favor of Annie's Express on July 15, 2019. Monarca timely filed a notice of appeal; both she and the trial court complied with Pa.R.A.P. 1925. Monarca raises the following issues for our review:

1. Did the trial court commit an error of law and/or abuse its discretion in denying [Monarca]'s challenges for cause as to Jurors [numbers] 7 & 20, due to their admitted biases such that the order denying post-trial motions should be reversed and a new trial awarded?

2. Did the trial court commit prejudicial error by failing to charge [the jury] on spoliation of evidence [] when the facts of the case supported [Monarca]'s request that the charge be given?

3. Did the trial court err in failing to grant [Monarca]'s motion for at least additional discovery given the need to investigate discovery abuses first revealed post-verdict?

Brief of Appellant, at 4-5 (unnecessary capitalization omitted).

Monarca first claims that the trial court erred or abused its discretion in denying her motion for a new trial where the court erred or abused its discretion (1) by denying her challenges for cause to two venirepersons during

*voir dire* and (2) denying her request to charge the jury on spoliation of evidence.

Our standard of review with regard to the denial of a motion for a new trial is to decide whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case. *Randt v. Abex Corp.*, 671 A.2d 228, 232 (Pa. Super. 1996).

With regard to Monarca's first issue, we note that the sole purpose of *voir dire* is to secure a "fair, competent, and impartial jury." *Bohner v. Stine*, 463 A.2d 438, 442 (Pa. Super. 1983). The role of the trial judge is to "determine whether [each] juror is able to put aside any biases or prejudices upon proper instruction from the court." *Commonwealth v. Colson*, 490 A.2d 811, 818 (Pa. 1985). Generally, the decision on whether to disqualify a potential juror is "within the discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion." *Commonwealth v. Koehler*, 737 A.2d 225, 238 (Pa. 1999).

We have consistently held that there are two scenarios in which the trial court is required to grant a challenge for cause: first, when the prospective juror has "a close relationship, be it familial, financial[,] or situational with the parties, counsel, victims, or witnesses[;]" and second, where the juror demonstrates a "likelihood of prejudice . . . by his conduct and answers" at *voir dire*. *Cordes v. Assoc's. of Internal Medicine*, 87 A.3d 829, 833-34 (Pa. Super. 2014).

> Our standard of review of a denial of a challenge for cause differs, depending upon which of these two situations is presented. In the first situation, in which a juror has a close relationship with a participant in the case, the determination is practically one of law and as such is subject to ordinary review. *In the second situation*, when a juror demonstrates a likelihood of prejudice by conduct or answers to questions, much depends upon the answers and demeanor of the potential juror as observed by the trial judge and therefore[,] *reversal is appropriate only in the case of palpable error*.

*Id.* at 834 (emphasis added). We afford "great weight" to the determination of the trial judge, "who sees [the juror] and hears what is said[,] and is able to form his opinion as much from the proposed juror's conduct as from the words which he utters, printed in the record." **Commonwealth v. Gelfi**, 128 A. 77, 79 (Pa. 1925); **see also Shinal v. Toms**, 162 A.3d 429, 442 (Pa. 2017).

Here, Monarca submits that it was an abuse of discretion for the court to deny her challenges for cause to prospective jurors[3] numbers 7 and 20 because their answers and conduct demonstrated a likelihood of prejudice against Monarca and the nature of her case. She maintains that it was reversible error to affirm that ruling post-trial.

_____

[3] Neither venireperson at issue here was empaneled on the jury. However, Monarca submits that a new trial is warranted because she was "forced to use [her] peremptory challenges to excuse [two] prospective juror[s] who should have been excused for cause, and then exhaust[ed] [her] peremptor[y] challenges] before the jury [was] seated." Brief of Appellant, at 21, quoting **Commonwealth v. Johnson**, 445 A.2d 509, 514 (Pa. Super. 1982). "The burden of proving that a venireman should be excused for cause is on the challenger," who must demonstrate that the venireman "possesses a fixed, unalterable opinion that would prevent him or her from rendering a verdict based solely on the evidence and law." **Commonwealth v. Smith**, 540 A.2d 246, 256 (Pa. Super. 1988).

During *voir dire,* prospective juror number 7 engaged in the following exchange with the court:

> THE COURT:  **You could listen openly and fairly to both sides?**
>
> PROSPECTIVE JUROR NO. 7:  **I would.**  A slip and fall case is pretty frivolous, probably a waste of time.  Aside from that, probably not.
>
> THE COURT:  Well, people can have all sorts of opinions about things in general.  But, do you understand, if you are selected as a juror in this matter, you would be limited in rendering your verdict to the facts you hear in the courtroom, and the laws I give you to apply to those facts?  **Do you believe you would follow that instruction, put aside any other preconceived notions you have?**
>
> PROSPECTIVE JUROR NO. 7:  **Yes.**

N.T. Trial, 8/27/18, at 101 (emphasis added).  When Monarca's counsel was given the opportunity to ask him follow-up questions, the following exchange continued:

> MR. SNOVER:  Okay.  I just want to ask you a few questions about the issue of slip and fall or trip and fall cases.  If the judge gives you instructions about what the law is, and you were to find that a defendant was negligent, **would you still be able to render a verdict for the plaintiff, given the fact that you feel slip and fall or trip and fall cases are frivolous**.
>
> PROSPECTIVE JUROR NO. 7:  **Yeah**, I suppose so.
>
> MR. SNOVER:  Do you have any doubt about that?
>
> PROSPECTIVE JUROR NO. 7:  I wouldn't say I'm 100% on that, no.  I guess **it depends on the facts of the case.  I haven't heard it.**
>
> THE COURT:  Okay.  **Do you understand that** there may be some cases you've heard, and you think, Oh gee, that was

frivolous, but **you don't know the facts, and this may very well be a legitimate one on its merits**?

MR. SNOVER: **Yes, I hope so**.

*Id.* at 102 (emphasis added).

Monarca raised a challenge for cause on the basis that prospective juror number 7 "[came] in with a predisposition against [her] type of case." *Id.* at 103. The court denied the challenge on the basis that the prospective juror indicated he could be fair: although "[h]e said he has an opinion about those cases in general, [] he also stated he had not heard the facts of this case and would be able to make an independent evaluation." *Id.*

Presently, Monarca attempts to characterize the venireman's "hope" by suggesting that "he was really saying that he hoped he could be fair . . . but . . . had doubts . . . [he] could set aside [his] total lack of respect for this type of case when judging the evidence," and thus, Monarca's challenge for cause should have been granted. Brief of Appellant, at 23 n.19. We agree with the trial court that, to the contrary, the venireman's statement "indicated that he hoped this case would be a legitimate one on the merits, which, considered in conjunction with his other responses, indicated that he could be fair and would listen to and consider all of the facts of the case before reaching a verdict." Trial Court Opinion, 8/2/19, at 7-8. Accordingly, we find that the trial court did not palpably abuse its discretion in denying Monarca's challenge to venireperson number 7 for cause, or her motion for new trial on those grounds. *Cordes*, *supra*; *Randt*, *supra*.

The other venireperson Monarca contends should have been stricken is prospective juror number 20, who indicated that he works as a psychiatric nurse. At *voir dire*, the following exchange took place:

THE COURT: Sitting here today, do you have such an opinion about your past experience in the mental health field that even if the law and facts convince you [that] you should enter a verdict in favor of the plaintiff, you would still vote for the defense just because you say, Well, I've seen all sorts of claims and I'm not going to—

PROSPECTIVE JUROR NO. 20: I think I do — Your Honor, **I think I do have a bias in the sense that I think people don't really listen to people**.

THE COURT: Okay.

PROSPECTIVE JUROR NO. 20: Okay, and they take the first judgment, and they see the first fact when they don't actually go beyond, and I think it's the story that's beyond that often tells more of the truth than the initial fact.

\* \* \*

So, that's, I mean, that's just, basically, where I would come. **I would probably want to hear more, see more, and I'd probably want to get something more in depth** (sic) **before I make a judgment.** There's always that part that people don't touch, don't listen to.

\* \* \*

MR. SNOVER: Okay. **So, when you're talking about judging somebody's testimony on the stand, are you bringing your expertise into play** in that **as a nurse** who's involved in the healthcare field, particularly psychiatric, for a long time?

PROSPECTIVE JUROR NO. 20: **I would say yes.**

\* \* \*

MR. SNOVER: **So, you may be making, basically, professional judgments as opposed to a judgment as a layperson?**

PROSPECTIVE JUROR NO. 20: Yes, and I may be making it based on the information that's presented, which I know I would be doing that on whatever is presented. That's not a statement. Let me strike that right there. **No, I would always be basing it on what's presented**, **and I would always be reviewing using my past history** of what I've been doing.

MR. SNOVER: Your training?

* * *

PROSPECTIVE JUROR NO. 20: My training, correct.

N.T. Trial, 8/27/18, at 217-22 (emphasis added).

Monarca challenged the venireman for cause on the grounds that he would "bring[] his professional training" into jury deliberations, "as opposed to [how] a layperson would" assess evidence. *Id.* at 224. The court, declining to categorically exclude workers in the field of psychiatry from serving on a jury, denied the challenge, further explaining that this venireperson "never had any interaction with this particular plaintiff, nor with [her] doctors. He hasn't treated her. He didn't raise his card that he knows the defendant." *Id.* at 225.

Monarca avers that she does not advocate for an occupational exception for psychiatric nurses. Brief of Appellant, at 28. Rather, she submits that the trial court should have granted her challenge for cause for this juror because he "admitted bias" and stated that he would always be "acting as his own expert . . . to judge [Monarca]'s credibility." *Id.* at 28-29.

- 10 -

Although the prospective juror used the word "bias" in one of his responses, he immediately clarified his bias as a predisposition to expect that people do not listen to each other; he suggested that he, in contrast, is more inclined to watch and listen carefully and think critically when assessing witness credibility in general. N.T. Trial, 8/27/18, at 217-22. Furthermore, the venireman made clear that he would always assess witness credibility using the evidence presented at trial and stated he would not be making professional judgments as opposed to that of a layperson. *Id.* Monarca has not identified any case law or statute prohibiting someone with a psychiatry or healthcare background from serving on a jury such that it required this venireman be stricken for cause. Therefore, we find that the court did not palpably abuse its discretion in denying her challenge for cause or motion for new trial.

Next, Monarca claims that the trial court erred in denying her post-trial motion where the court previously "committed prejudicial error by failing to charge [the jury on] spoliation of evidence[,] which the facts supported," and thus, a new trial is warranted. *See* Brief of Appellant, at 34 (unnecessary capitalization omitted); *see also Randt*, *supra*. We disagree that the circumstances of this case justified charging the jury on spoliation of evidence, and we find that the trial court did not err or abuse its discretion in denying Monarca's post-trial motion on those grounds.

> Our standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or error of law controlling

- 11 -

the outcome of the case. It is only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue that error in a charge will be found to be a sufficient basis for the award of a new trial.

A trial court must instruct the jury on the correct legal principles applicable to the facts presented at trial. A trial court has wide latitude choosing the precise language of the charge, but in all instances must fully and adequately convey the applicable law to the jury.

**Gillingham v. Consol Energy, Inc.**, 51 A.3d 841, 856-57 (Pa. Super. 2012) (citations and quotation marks omitted).

"'Spoliation of evidence' is the failure to preserve[,] or the significant alteration of[,] evidence for pending or future litigation." **Parr v. Ford Motor Co.**, 109 A.3d 682, 701 (Pa. Super. 2014). When a party is charged with spoliation of evidence, the trial court may, in its discretion, impose a range of sanctions against the spoliator. "[O]ne potential remedy for the loss or destruction of evidence by the controlling party is to allow the jury to apply its common sense and draw an 'adverse inference' against that party." **Id.** at 701-02. Charging the jury on spoliation[4] is appropriate where a party

---

[4] The jury instruction at issue provides as follows:

**5.60 SPOLIATION OF EVIDENCE**

1. If a party [disposes of] [alters] a piece of evidence before the other the other party had an opportunity to inspect it, and

2. The party who [disposed of] [altered] the evidence should have recognized the evidence was relevant to an issue in this lawsuit,

intentionally, recklessly, or negligently destroys or permits the destruction of evidence when it is foreseeable that discarding such evidence would be prejudicial to the adverse party. *See Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div.*, 781 A.2d 1263, 1270-71 (Pa. Super. 2001); *Marshall*, *supra* at 272.

Here, upon review of our en banc decision in *Marshall*, *supra*, the trial court concluded that the facts of this case did not support Monarca's assertion that any spoliation occurred, and determined that charging the jury on spoliation of evidence was not warranted under the circumstances.

In *Marshall*, another case involving a slip and fall accident captured on video, plaintiff's counsel sent a letter to the defendant, ShopRite, two weeks after the fall, requesting nine hours of surveillance video footage. *Id.* at 266. The letter notified ShopRite of the impending litigation and further advised that failure to maintain or preserve the specified footage, if it existed, would lead to the inference that ShopRite intentionally destroyed the evidence. *Id.* Notwithstanding, ShopRite turned over approximately one hour of video footage in accordance with its "rule of thumb," maintaining that it "'would be a fool's errand' to go back [and review] several hours [of footage] as

---

you may find that this evidence would have been unfavorable to them unless they satisfactorily explain why they [disposed of] [altered] this evidence.

Pa. S.S.J.I. (Civ), § 5.60 (2019) (brackets in original).

requested." *Id.* Under these circumstances, this Court concluded that the trial court abused its discretion in denying Marshall's request for a spoliation of evidence instruction. Monarca submits that *Marshall* is factually "almost on all fours with the instant case," and involved "even less compelling circumstances than exist [here]" justifying the instruction. *See* Brief of Appellant, at 36. We disagree.

The accident in this case occurred on December 8, 2014. William Stamos, owner of Annie's Express, testified that on that same day, he preserved surveillance footage that included the entirety of Monarca's time on the premises and captured her fall from several angles. N.T. Trial, 8/27/18, at 534. He further testified that Annie's Express' surveillance system, which is motion-activated, automatically overwrites (i.e., destroys) old footage after approximately two weeks if it is not saved. *Id.* at 507, 526-34. One week after the accident, on December 15, 2014, Monarca's counsel sent a letter to Annie's Express regarding her representation in this matter; the letter made no mention of surveillance footage, and did not include a request for Annie's Express to preserve any footage. Motion for Reconsideration, Exhibit I. Fifteen days after the accident, on December 23, 2014, Monarca's counsel sent a letter to a representative of Annie's Express' insurer requesting them to instruct Annie's Express to preserve all surveillance footage of the premises from 2:00 to 7:00 p.m. on the date in question, noting that failure to do so would result in an adverse inference. Defendant's Response to Plaintiff's

Motion for Post-Trial Relief, Exhibit B. By the time Annie's Express was requested to do so, the footage from over two-and-one-half weeks earlier that was not already preserved had been overwritten.

We agree with the trial court that the facts herein are materially distinguishable from the facts in *Marshall*. Trial Court Opinion, 8/2/19, at 24; Order, 6/26/19, n.1. Here, Monarca failed to establish that Annie's Express negligently or otherwise intentionally permitted the destruction of evidence; indeed, Annie's Express made efforts to preserve relevant footage of the accident on the date it occurred, "[r]ather than permitting the footage to get overwritten, and without any actual indication that a lawsuit was pending." *See* Trial Court Opinion, 8/2/19, at 22-29. The defendant in *Marshall*, in contrast, consciously disregarded plaintiff's request for "arguably relevant evidence" during discovery, turning over approximately ten percent of the video surveillance footage plaintiff sought after having been notified of impending litigation and specifically warned that failing to turn over the requested footage would result in an adverse inference. *See id.*

Furthermore, the trial court found that here, Monarca was not prejudiced as additional footage would not have changed the outcome of the trial given that the jury repeatedly saw footage establishing the location of the bucket prior to Monarca's arrival and both parties testified that they knew how and where the bucket was situated at the time of the incident. *Id.* at 28-29. Accordingly, we conclude the trial court did not err or abuse its discretion in

denying Monarca's request for a spoliation of evidence instruction or her post-trial motion on those grounds. ***Randt***, ***supra***; ***Gillingham***, ***supra***.

Finally, Monarca claims that the trial court erred in denying her motion for additional discovery "given the need to investigate discovery abuses first revealed post-verdict." Brief of Appellant, at 50. Monarca alleges that Annie's Express made a "judicial admission" post-trial that it turned over less video footage during discovery than was actually preserved.

> The basis for this assertion stems from defense counsel's argument in its Brief in Opposition to Plaintiff's Post-Trial Motion for a New Trial in addressing the question of whether a spoliation instruction should have been read to the jury. That statement [provides, in relevant part,] as follows:

>> [Annie's Express] cannot be sanctioned for spoliation: [Annie's Express] was not at fault for destruction of evidence, Plaintiff cannot assert that prejudice inured to her due to the purported spoliation, and [Annie's Express] was not on notice of pending litigation. . . . Plaintiff's motion [] discusses requests for 2 weeks of video footage yet [her] own letter requiring preservation of video only requested a mere 5 hours of footage. **[Annie's Express] preserved what was asked of [it] in accordance with [Monarca']s counsel's request.**

>> \* \* \*

> [Monarca] argues that based on this response, footage exists showing the location of the bucket for approximately four hours prior to Plaintiff's arrival on December 8, 2014. . . . [Monarca] moved for the admission of an exhibit in the form of a disc containing all of the footage turned over in discovery . . . [and sought] leave of court to conduct further discovery to determine whether [Annie's Express] preserved more video footage than it produced during discovery.

Order, 6/10/19, n.1, quoting Defendant's Brief in Response to Plaintiff's Post-Trial Motions for a New Trial (emphasis in original).

- 16 -

Counsel for Annie's Express, Attorney Andrew Kessler, explained that his representation regarding five hours of preserved footage was erroneous[5] and that he "intended to make the argument that [Monarca's post-trial motion] sought more expansive production of video footage [than] previously requested." Defendant's Response to Plaintiff's Reply Brief in Support of Post-Trial Motions for New Trial, 4/24/19, at 1. Attorney Kessler clarified that Annie's Express turned over all of the footage actually preserved in accordance with its obligations under the discovery rules. *Id.* Monarca argues that this "is simply not good enough" to justify denying her motion for additional discovery. However, the record belies Monarca's assertion that Annie's Express withheld video footage from her.

Throughout trial, there was no dispute that the footage repeatedly shown to the jury constituted the entirety of the footage that Annie's Express preserved. The issue of additional footage arose only when a new attorney entered an appearance, after the case was tried, and made an incorrect representation which he subsequently acknowledged and corrected, consistent with his obligations under the Rules of Professional Conduct.[6]

---

[5] The trial court noted that Attorney Kessler explained at oral argument that his error stemmed from the fact that he did not participate in discovery, but assumed responsibility for the case after it had already been tried by a jury. Trial Court Opinion, 2/26/19, at 20.

[6] The Rules of Professional Conduct provide that a lawyer "shall not knowingly . . . make a false statement of material fact or law to a tribunal or fail to

Moreover, Mr. Stamos testified at trial regarding the amount of footage he preserved.[7] Based on the foregoing, we find the court did not abuse its discretion in determining that there was no need for additional discovery into this matter.

After a review of the parties' briefs, the relevant case law, and record on appeal, including the well-authored opinion of Judge Reichley, we affirm the trial court's orders denying Monarca's post-trial motion and denying additional discovery.

Judgment affirmed.

_____

correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"  Pa.R.P.C. 3.3(a)(1).

[7] Stamos testified as follows:

> Q:  And did you save the entire two weeks [of video footage]?
>
> A:  No, sir.
>
> Q:  You saved the, basically the incident itself of the several cameras.
>
> A:  That's correct.
>
> * * *
>
> A:  I reviewed probably eight different camera angles across a couple of hours the first time, and I jotted down the times on each camera as to what would be applicable for recording.  . . .  that was my guidelines for going in and doing the data dump of the download, camera by camera, and put it on the thumb drive.  So, at the time I viewed the video the first time, I did not view the video in full complete detail.

N.T. Trial, 8/30/18, at 526-34.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 6/10/2020*