J-S36031-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN UNDERWOOD | : | |
| | : | |
| Appellant | : | No. 1891 WDA 2019 |

Appeal from the Judgment of Sentence Entered December 9, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000779-2019

BEFORE:  OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:              FILED AUGUST 17, 2020

Kevin Underwood (Underwood) appeals from the judgment of sentence imposed by the Court of Common Pleas of Fayette County (trial court) after his jury conviction of Contraband and Possession of a Controlled Substance by a Person Not Registered.[1]  Specifically, he challenges the sufficiency of the evidence to support his conviction.  We affirm.

I.

We take the following factual background and procedural history from the trial court's February 21, 2020 opinion and our independent review of the record.  On January 7, 2019, the Commonwealth filed a criminal complaint

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 5123(a) and 35 Pa.C.S. § 780-113(a)(16), respectively.

against Underwood charging him with the above crimes for an incident that occurred on April 5, 2018, at the State Correctional Institution Fayette (SCI Fayette) where he is an inmate. Underwood filed a Request for Discovery on May 15, 2019, in which he sought the names and addresses of any witnesses, along with copies of their statements, any statements made by Underwood, police reports and any physical evidence including "fingerprint comparison tests, all photographs [and] drawings." (Request for Discovery, 5/15/19, at 1). The Commonwealth submitted the identified materials in its possession on November 5, 2019, and the Public Defender's Office verified receipt of it.

The case proceeded to a two-day jury trial on November 6, 2019. The Commonwealth presented the testimony of Lieutenant Albert Wood, Officer Garland and Captain Frank Salvay.[2]

Lieutenant Wood testified that on the day in question, he was serving in his capacity as the acting Security Officer at SCI Fayette on the 13:00 to 21:00 shift. (See N.T. Trial, 11/06/19, at 8-9). The trial court explained:

> The Security Department is responsible for safety in the daily activities in the prison. (See id. at 9). Lieutenant Wood testified that Contraband found in the confines of a prison may include money, weapons, or drugs. (See id.). Lieutenant Wood stated that the Security Department is the information gathering organization within the prison, much like an internal police force. (See id. at 9-10). [On April 5, 2018, t]he Security Department received information from an anonymous informant stating that

_____

[2] Trooper Melinda Churney testified on behalf of the Commonwealth regarding the K2. However, because this is not relevant to the issue before the Court, we will not discuss her testimony here.

[Underwood] was in possession of K2, a synthetic cannabinoid. (See id. at 12). It is common for Security to receive these kinds of anonymous tips. (See id. at 11-12). Upon receipt of this information, Lieutenant Wood and his staff began to investigate by moving into a hub area outside of the cell where [Underwood] was quartered. The security team waited in this area until [Underwood] exited his cell on his way to the yard for activities. Once [Underwood] arrived in the hub, the security team restrained [him] and escorted him to the strip and search area. (See id. at 12). The security team assisting Lieutenant Wood consisted of Officer Garland, Officer Patterson, and Lieutenant Lowden. (See id. at 15).

[Underwood] was placed into the strip search area, where he was searched. (See id. at 16-17). [He] removed each article of clothing individually and hand[ed] them through a small aperture [to the officers waiting to receive them outside the room. Underwood was the only person in the room with access to this slot.] (See id. at 17). When [Underwood] handed his underwear, a sock fell. [No one but the lieutenant and Officer Garland touched the sock. (See id. at 19).] When [Officer Garland] picked up the sock and handed it to Lieutenant Wood, the lieutenant] could feel something inside of it. (See id. at 17-18). This product was found to be contraband, later identified as K2. (See id. at 18).

(Trial Court Opinion, 2/21/20, at 2-3) (record citation formatting and some record citations provided).

On cross-examination, Lieutenant Wood asserted that there is a camera in the hub area and that cameras record the walkway to the strip search area. (See id. at 27-29). He stated that at the time of trial, there was a security camera in the strip search area, but that he was unsure about whether there was one there at the time Underwood was there. (See id. at 27, 29). He did not request that any videotapes be preserved because it would have been Security Captain Frank Salvay's responsibility to do so if necessary. (See id. at 30).

- 3 -

Officer Garland's testimony about the incident with Underwood was consistent with that of Lieutenant Wood in all salient respects, i.e., that they received a tip that Underwood possessed contraband, they originally encountered him in the hub area and that they escorted him to the secure strip search area. (See id. at 44-47). Underwood entered the secured room alone and then handed his clothes to the officers through an aperture in the locked door. (See id. at 49). The room has a glass window through which the officers could see Underwood the entire time. (See id.). As Underwood handed out his clothing, what appeared to be a rolled-up sock dropped out and onto the floor, and as Officer Garland bent down to pick it up, Officer Wood also did so and secured the sock. (See id. at 50-51). Although Officer Garland's hand brushed the sock as the lieutenant picked it up, he did not see the contraband. (See id. at 53). He stated that at the time of trial, there were two cameras in the strip search room, but that on April 5, 2018, there was only one and it was pointed toward another area than the one where the incident occurred. (See id. at 54). He also testified that although there were cameras between the hub and the secured strip search area, the cameras point in different directions, so whether they recorded the officers escorting Underwood depends on where they were pointing at the time. (See id. at 54).

Captain Salvay gathered intelligence regarding any issues that occurred at SCI Fayette, communicated it to law enforcement, and provided the

- 4 -

Pennsylvania State Police with any incident-related evidence. (See id. at 59-60). He testified that at the time of the April 5, 2018 incident, there was no camera in the area where the officers performed the search, and that any testimony that a camera existed at that time was incorrect. (See id. at 60-61, 63). He explained that the system has since been upgraded and that by the time of trial, two had been placed in the strip and search area, one in the room where Underwood removed his clothes and handed them out to the officers and one in the adjoining cell area from which officers conduct searches. (See id. at 61, 63-64). Captain Salvay said there is no policy about recording inmates when they are strip-searched. (See id. at 64).

He also testified that the Pennsylvania State Police did not request that he preserve camera footage from the walkway between the hub and the security area on the date of the incident, and that any such footage no longer existed because the tapes automatically re-write every 15 to 20 days. (See id. at 62). The Security Captain explained that he would only have saved video of that day from the walkway if there had been any incident there, but since there was not, any tape would have been irrelevant and would have just been allowed to rewrite itself as part of the usual procedure. (See id. at 62-63, 65-67). He also confirmed that Underwood never made any complaints about anything occurring with the officers during the April 5, 2018 incident in either the walkway, the strip search area or anywhere else. (See id. at 69).

On April 7, 2018, at the conclusion of trial, the jury convicted Underwood of the foregoing charges. The court sentenced him to a term of incarceration of not less than 18 nor more than 48 months on December 9, 2019. Underwood did not file a post-sentence motion, but he timely appealed on December 26, 2019. He and the court complied with Rule 1925. See Pa.R.A.P. 1925.

## I I.

On appeal, Underwood raises one question for our review in which he maintains that the evidence[3] was not legally or factually sufficient to support

_____

[3] Our standard of review of this matter is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact [,] while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

his conviction. Specifically, he argues that SCI failed to preserve video evidence, allowing for its spoliation, and that, although multiple officers were involved in the search, only one officer testified that the contraband was found on him. (See Underwood's Brief, at 6).

A.

We address Underwood's spoliation issue first.[4] Spoliation is "the non-preservation or significant alteration of evidence[5] for pending or future litigation[,]" that authorizes "trial courts to exercise their discretion to impose a range of sanctions against the spoliator." Marshall v. Brown's IA, LLC,

_____

Commonwealth v. Smith, 206 A.3d 551, 557 (Pa. Super. 2019), appeal denied, 217 A.3d 2020 (Pa. 2019) (citation omitted).

[4] Underwood fails to provide any pertinent legal citation or discussion thereof in support of his spoliation claim or to identify where he raised the spoliation issue in the trial court in violation of the Pennsylvania Rules of Appellate Procedure. See Pa.R.A.P. 1925(b), (2119(a), (e)). In fact, the certified record provided to this Court does not contain any argument by defense counsel that spoliation warranting sanctions occurred. See Commonwealth v. Johnson, 33 A.3d 122, 126 n.6 (Pa. Super. 2011) ("It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in the case. That is because for purposes of appellate review, what is not of record does not exist.") (citations and internal quotation marks omitted). Therefore, the claim is waived. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). However, although the trial court did not have the opportunity to address this issue, we will briefly address its merits.

[5] "Evidence is relevant if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact." Commonwealth v. Kennedy, 959 A.2d 916, 923 (Pa. 2008), cert. denied, 556 U.S. 1258 (2009) (citation omitted).

213 A.3d 263, 267-68 (Pa. Super. 2019), appeal denied, 226 A.3d 568 (Pa. 2020) (citations omitted). If spoliation has occurred, three factors must be considered in assessing the proper penalty: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." Id. at 268.

Instantly, it is not clear that a video of the incident existed in the first place or that, if a video camera was nearby, that it was facing the area in which the search occurred, thus containing evidence relevant to this litigation. Underwood asserts that Lieutenant Wood testified that there are cameras "all over the prison," including in the hub, the walk to the strip search area and the strip search area itself, that the officers regularly watch them and that handling requests for them are part of his normal procedure. (See Underwood's Brief, at 8-9). However, our review reflects that even if there were cameras located throughout the prison, none of them was in the strip search area and that, contrary to Underwood's characterization of the facts, Lieutenant Wood expressly stated that the decision to preserve a relevant video to supply to the Pennsylvania State Police was Captain Salvay's responsibility, not his.

In fact, Captain Salvay, the Security Captain, testified that there was no camera in the strip search area at the time of the incident, there was no policy for recording strip searches, and that Underwood did not complain that

anything inappropriate occurred in the walkway or anywhere else. The Security Captain also stated that the testimony that there was a camera in the strip search area that was not pointed in the incident's direction was incorrect because the prison had updated its security system to include such a camera only sometime after this incident happened. Hence, he stated, because any cameras that they had at that time would have been in the walkway or hub, they would not have contained relevant tapes of the strip search that needed to be preserved for litigation of this matter.

Therefore, based on the foregoing, the automatic overwriting of prison video tapes was not spoliation where it did not destroy relevant evidence for the foreseeable litigation against Underwood. Therefore, even if Underwood had preserved his spoliation issue by raising it in the trial court, it would not have merited relief.[6]

_____

[6] In fact, Underwood does not identify exactly what relevant evidence the cameras would have contained other than that which would have bolstered the officers' testimony. It appears that he is conducting a fishing expedition. He never claimed at any time that the officers did anything inappropriate during his strip search or that they planted the illegal drugs on him.

B.

The crux of Underwood's argument appears to be that because there was conflicting testimony about what occurred during the incident, and only one officer witnessed the contraband, the lack of a videotape to show definitely what occurred results in a "mere[] . . . suspicion of guilt" that is insufficient to support his conviction. (Underwood's Brief, at 10) (citation omitted); (see id. at 9-10). We disagree.

Section 5123 of the Crimes Code, Contraband, provides, in pertinent part that "[a] prisoner or inmate commits a felony of the second degree if he unlawfully has in his possession or under his control any controlled substance in violation of [35 P.S. § 780–113(a)(16)]." 18 Pa.C.S. § 5123(a.2). The intent of subsection 5123(a.2) is to prevent "inmates [from] obtaining any controlled substance in any amount whatsoever; in other words, the contraband statute seeks absolute abstinence by inmates[.]" Commonwealth v. Cornelius, 180 A.3d 1256, 1260 (Pa. Super. 2018) (internal quotation marks and citation omitted). Possession of a controlled substance can be established by showing either actual or constructive possession. Actual possession is established by showing that the defendant had the controlled substance on his person, while constructive possession can be proved through a showing that the defendant exercised dominion over the substance. See Commonwealth v. Ocasio, 619 A.2d 352, 354 (Pa. Super. 1993). The intent required to show a conscious dominion and control over

the controlled substances may be inferred from the totality of the circumstances. See id.

Underwood maintains that there were conflicting details about who picked up the sock that contained the contraband and who observed the contraband, with only one officer testifying that he observed the illegal substance. (See Underwood's Brief, at 9-10). He argues that these inconsistencies, combined with the failure to preserve the videotape, results in a "mere[] . . . suspicion of guilt" and that, therefore, the evidence was insufficient to support his conviction. (Id. at 10) (citation omitted). We disagree.

First, there is nothing in the Contraband statute that requires the Commonwealth to provide video evidence or mandates that a certain number of witnesses must testify to witnessing the violation. In fact, Underwood's argument goes more to the weight to be afforded to the Commonwealth's evidence than its sufficiency. See Commonwealth v. Trinidad, 96 A.3d 1031, 1038 (Pa. 2014) (contradictions and inconsistencies in testimony go to weight, not sufficiency). Moreover, our review of the notes of testimony referenced by Underwood reveals that the officers' testimony was consistent about the salient details of the incident.

The Commonwealth presented officer testimony that after receiving an anonymous tip that Underwood possessed K2, a synthetic cannabinoid controlled substance, the SCI Fayette officers performed a search of him.

During that search, a packet of K2 wrapped in a sock fell from Underwood's underwear as he was handing it to them. The jury was free to believe all, some or none of this evidence in passing upon the credibility of witnesses and the weight of the evidence produced, and this Court will not re-weigh the evidence or substitute our judgment for that of the fact-finder.

Hence, based on the foregoing and after our own independent review of the record, we conclude that the trial court properly found that the evidence was sufficient to support the jury's verdict. Underwood's issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2020